# Exhibit 2

Case 4:12-cv-00154-D   Document 43-2   Filed 10/22/12   Page 1 of 8

STATE OF NORTH CAROLINA              NORTH CAROLINA
DEPARTMENT OF ENVIRONMENT AND
NATURAL RESOURCES

COUNTY OF JONES

|  |  |
|---|---|
| IN THE MATTER OF ) | File No. DV-2011-0012 |
| BOBBIE F. MCLAWHORN ) |  |
| ) |  |
| ) | FINDINGS AND DECISION |
| FOR VIOLATIONS OF SWINE WASTE ) | AND ASSESSMENTS OF |
| GENERAL PERMIT AWG100000 ) | CIVIL PENALTIES |
| PURSUANT TO NORTH CAROLINA ) |  |
| GENERAL STATUE 143-215.1 ) |  |

Acting pursuant to delegation provided by the Secretary of the Department of Environment and Natural Resources and the Director of the Division of Water Quality, I, Theodore L. Bush Jr., Chief of the Aquifer Protection Section of the Division of Water Quality (DWQ), make the following:

I.     FINDINGS OF FACT:

    A. Bobbie F. McLawhorn owned and operated McLawhorn Livestock Farm (Banks), a swine animal feeding operation in Jones County, during the period of time covering the events herein described.

    B. Bobbie F. McLawhorn was issued Certificate of Coverage AWS520002 under General Permit AWG100000 for McLawhorn Livestock Farm (Banks) on October 1, 2009, effective upon issuance, with an expiration date of September 30, 2014. The facility was sold on November 23, 2010 and a new Certificate of Coverage issued to Donald E. Taylor on February 4, 2011, effective upon issuance, with an expiration date of September 30, 2014.

    C. Condition No. I.1. of General Permit AWG100000 states in part that any discharge of waste that reaches surface waters or wetlands is prohibited except as otherwise provided in this General Permit and associated statutory and regulatory provisions. Waste shall not reach surface waters or wetlands by runoff, drift, manmade conveyance, direct application, direct discharge or through ditches not otherwise classified as state waters. Any discharge or application of waste to a ditch that drains to surface waters or wetlands is prohibited except as follows: (a) discharges from the ditches are controlled by best management practices (BMPs) designed in accordance with NRCS standards; (b) the BMPs have been submitted to and approved by the Division of Water Quality (Division); (c) the BMPs were implemented as designed to prevent a discharge to surface waters or wetlands; (d) the waste was removed immediately from the ditch upon discovery; and (e) the event was documented and reported in accordance with Part III.13. of this General Permit. Nothing in this exception shall excuse a discharge to surface waters or wetlands except as may result because of rainfall from a storm event more severe than the 25-year, 24-hour storm.

1

D. Condition No. II.2. of General Permit AWG100000 states that "a vegetative cover shall be maintained as specified in the facility's CAWMP on all land application fields and buffers in accordance with the CAWMP. No waste shall be applied upon areas not included in the CAWMP or upon areas where the crop is insufficient for nutrient utilization. However, if the CAWMP allows, then waste may be applied up to thirty (30) days prior to planting or breaking dormancy."

E. Condition No. II.5 of General Permit AWG100000 states that in "no case shall land application rates result in excessive ponding or runoff during any given application event."

F. Condition No. II.24. of General Permit AWG100000 states that "all waste application equipment must be tested and calibrated once in the first two years after issuance of the COC and then at least once every two years thereafter. The result must be documented on forms provided by, or approved by, the Division."

G. Condition No. II.26 of General Permit AWG100000 states that "crops for which animal waste is land applied must be removed from the land application site and properly managed and utilized unless other management practices are approved in the CAWMP."

H. Condition No. III.6. of General Permit AWG100000 states in part that the Permittee shall record all irrigation and land application event(s) including hydraulic loading rates, nutrient loading rates and cropping information and that these records must be on forms supplied by, or approved by, the Division.

I. Condition No. V.2. of General Permit AWG100000 states that the maximum waste level in lagoons/storage ponds shall not exceed that specified in the facility's CAWMP. The CAWMP for this facility requires nineteen (19) inches of freeboard.

J. On October 8, 2010, staff from DWQ and the Division of Soil and Water Conservation (DSWC), conducted a structural inspection of the facility's lagoons and discovered that Lagoon one (1) and two (2) had high freeboard levels in the structural zone and Lagoon three (3) had high freeboard. Waste levels were found to be at four (4) inches in lagoon 1, at eleven (11) inches in Lagoon 2, and at eighteen (18) inches in Lagoon 3.

K. Also on October 8, 2010, staff observed excessive ponding in multiple fields that resulted in waste runoff. In several locations, the ponded waste water discharged to irrigation ditches that drain to surface waters of the State, an unnamed tributary of Long Branch. Long Branch borders the western boundary of the facility. Direct discharge of waste from one ponded sprayfield into the unnamed tributary was also observed. Some of the sprayfields ponded with wastewater were bare. Other sprayfields ponded with wastewater had been planted with soybeans which were dead and unable to utilize nutrients. The application onto the soybean field was made outside the crop window designated in the CAWMP.

L. On October 11, 2010 DWQ and DSWC staff made a second site visit. Waste levels in lagoon 2 had dropped seven (7) inches since the prior visit; this represents an estimated volume of 423,196 gallons. Waste application had been made to the same saturated fields where the ponding and discharge had occurred on October 8, 2010 as well as on additional fields. This application created additional waste ponding, runoff, and hydraulic overload. Staff found evidence of wastewater in the adjacent woods, indicating

2

a portion of the wastewater had traveled off the sprayfield and downstream. Staff also found evidence of wastewater in the drainage way by Lagoon 1. A pump with a suction hose in Lagoon 1 and a soft discharge pipe running to the drainage way at the location of the wastewater was found. The discharge pipe contained wastewater indicating recent use. Staff collected samples from the ponded areas, from the unnamed tributary, from the wooded area, from the drainage way, and from Long Branch downstream of the facility. Sample results confirmed the presence of waste in these areas.

M. On November 19, 2010, DWQ and DWSC staff conducted a follow-up compliance inspection to check facility records and progress. Staff noted excessive ponding on the sprayfields. The bare fields referenced in item K above showed no evidence of a crop having been planted. The soybean crop in other sprayfields had not been harvested. Lagoon levels were in compliance. Irrigation records for all irrigation activities for dating back to March 2010 were missing. Rainfall, freeboard, and crop yield records were not on approved forms.

N. Bobbie F. McLawhorn does not have a valid permit for the above-described activity.

O. The cost to the State of the enforcement procedures in this matter totaled $1,353.00.

Based upon the above Findings of Facts, I make the following:

II. CONCLUSIONS OF LAW:

A. Bobbie F. McLawhorn is a "person" within the meaning of G. S. 143-215.6A pursuant to G. S. 143-212(4).

B. A permit for an animal waste management system is required by G. S. 143-215.1.

C. Long Branch constitutes Waters of the State within the meaning of G. S. 143-215.1 pursuant to G. S. 143-212(6).

D. Irrigation which created excessive ponding and runoff documented on October 8, 2010 is a violation of Condition No. II.5 of General Permit AWG100000.

E. The above mentioned discharge to waters of the state on October 11, 2010 is a violation of Condition No. I.1. of General Permit AWG100000.

F. Irrigation on bare ground, without planting a crop within 30 days of the application event is a violation of Condition No.II.2. of General Permit AWG100000.

G. Failure to calibrate irrigation equipment since 2006 is a violation of Condition No. II.24. of General Permit AWG100000.

H. Failure to maintain irrigation records for application of wastewater is a violation of Condition No. III.6. of General Permit AWG100000.

I. Failure to maintain adequate freeboard in each of the three waste lagoons a violation of Condition No. V.2. of General Permit AWG100000.

3

J. Bobbie F. McLawhorn may be assessed civil penalties in this matter pursuant to G.S. 143-215.6A(a)(2), which provides that a civil penalty of not more than twenty-five thousand dollars ($25,000.00) per violation may be assessed against a person who is required but fails to act in accordance with the terms, conditions, or requirements of a permit required by G.S. 143-215.1.

K. The State's enforcement costs in this matter may be assessed against Bobbie F. McLawhorn pursuant to G. S. 143-215.3(a)(9) and G. S. 143B-282.1(b)(8).

L. The Chief of the Aquifer Protection Section, Division of Water Quality, pursuant to delegation provided by the Secretary of the Department of Environment and Natural Resources and the Director of the Division of Water Quality, has the authority to assess civil penalties in this matter.

Based upon the above Findings of Facts and Conclusions of Law, I make the following:

III. DECISION:

Accordingly, Bobbie F. McLawhorn, owner of McLawhorn Livestock Farm (Banks), is hereby assessed a civil penalty of:

| Amount | Description |
|---|---|
| $ 2000.00 | For violating Condition No. II.5. of General Permit AWG100000 for excessive ponding and runoff on October 8, 2010. |
| $ 4500.00 | For violating Condition No. I.1. of General Permit AWG100000 for a discharge to waters of the State on October 11, 2010. |
| $ 3000.00 | For violating Condition No. II.2. of General Permit AWG100000 for application of waste on bare ground and failing to plant a crop within thirty days. |
| $ 500.00 | For violating Condition No. II.24. of General Permit AWG100000 for failure to calibrate irrigation equipment. |
| $ 2000.00 | For violating Condition No. III.6. of General Permit AWG100000 for failure to maintain irrigation records. |
| $ 3500.00 | For violating Condition No. V.2. of General Permit AWG100000 for failure to maintain adequate freeboard levels in lagoons. |
| $ 15,500.00 | **TOTAL CIVIL PENALTY** |
| $ 1,353.00 | Enforcement costs |
| $ 16,853.00 | **TOTAL AMOUNT DUE** |

4

As required by G. S. 143-215.6A(c), in determining the amount of the penalty I have considered the factors listed in G. S. 143B-282.1(b), which are:

(1) The degree and extent of harm to the natural resources of the State, to the public health, or to private property resulting from the violation;
(2) The duration and gravity of the violation;
(3) The effect on ground or surface quantity or quality;
(4) The cost of rectifying the damage;
(5) The amount of money save by noncompliance;
(6) Whether the violation was committed willfully or intentional;
(7) The prior record of the violator in complying or failing to comply with programs over which the Environmental Management Commission has regulatory authority;
(8) The cost to the State of the enforcement procedures.

IV. NOTICE:

I reserve the right to assess civil penalties and investigative costs for any continuing violations occurring after the assessment period indicated above. Each day of a continuing violation may be considered a separate violation subject to a maximum $25,000.00 per day penalty. Civil penalties and investigative cost may be assessed for any other rules and statutes for which penalties have not yet been assessed.

V. TRANSMITTAL:

These Findings of Fact, Conclusions of Law and Decision shall be transmitted to Bobbie F. McLawhorn, in accordance with N.C.G.S. 143-215.6(A)(d).

4/20/11
(Date)

Theodore L. Bush, Jr. Chief
Aquifer Protection Section
Division of Water Quality

5

STATE OF NORTH CAROLINA ENVIRONMENTAL MANAGEMENT
COMMISSION

COUNTY OF _____JONES_____

IN THE MATTER OF ASSESSMENT )  WAIVER OF RIGHT TO AN
OF CIVIL PENALTIES AGAINST ) ADMINISTRATIVE HEARING AND
GLENN MCLAWHORN ) STIPULATION OF FACTS

FILE NO. ___DV-2011-0012___

Having been assessed civil penalties totaling _$16,853.00_ for violation(s) as set forth in the assessment document of the Director of the Division of Water Quality dated April 21, 2011, the undersigned, desiring to seek remission of the civil penalties, does hereby waive the right to an administrative hearing in the above-stated matter and does stipulate that the facts are as alleged in the assessment document.

The undersigned further understands that all evidence presented in support of remission of this civil penalty must be submitted to the Director of the Division of Water Quality within thirty (30) days of receipt of the civil penalty assessment. No new evidence in support of a remission request will be allowed after thirty (30) days from the receipt of the civil penalty assessment.

This the _____ day of _____, 20___.

_____
SIGNATURE

ADDRESS

_____

_____

_____

TELEPHONE

_____

# JUSTIFICATION FOR REMISSION REQUEST

**DWQ Case Number:** DV-2011-0012          **County:** Jones
**Assessed Party:** Bobbie F. McLawhorn
**Permit No. (if applicable):** AWS520002      **Amount Assessed:** $ 16,853.00

Please use this form when requesting remission of this civil penalty. You must also complete the *"Request For Remission, Waiver of Right to an Administrative Hearing, and Stipulation of Facts"* form to request remission of this civil penalty. You should attach any documents that you believe support your request and are necessary for the Director to consider in evaluating your request for remission. Please be aware that a request for remission is limited to consideration of the five factors listed below as they may relate to the reasonableness of the amount of the civil penalty assessed. Requesting remission is not the proper procedure for contesting whether the violation(s) occurred or the accuracy of any of the factual statements contained in the civil penalty assessment document. Pursuant to N.C.G.S. § 143B-282.1(c), remission of a civil penalty may be granted only when one or more of the following five factors applies. Please check each factor that you believe applies to your case and provide a detailed explanation, including copies of supporting documents, as to why the factor applies (attach additional pages as needed).

\_\_\_\_ (a) <u>one or more of the civil penalty assessment factors in N.C.G.S. 143B-282.1(b) were wrongfully applied to the detriment of the petitioner</u> *(the assessment factors are listed in the civil penalty assessment document);*

\_\_\_\_ (b) <u>the violator promptly abated continuing environmental damage resulting from the violation</u> *(i.e., explain the steps that you took to correct the violation and prevent future occurrences);*

\_\_\_\_ (c) <u>the violation was inadvertent or a result of an accident</u> *(i.e., explain why the violation was unavoidable or something you could not prevent or prepare for);*

\_\_\_\_ (d) <u>the violator had not been assessed civil penalties for any previous violations;</u>

\_\_\_\_ (e) <u>payment of the civil penalty will prevent payment for the remaining necessary remedial actions</u> *(i.e., explain how payment of the civil penalty will prevent you from performing the activities necessary to achieve compliance).*

**EXPLANATION:**