IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

CIVIL ACTION FILE NO.: 4:12-cv-00154-D

| | |
|---|---|
| NORTH CAROLINA ENVIRONMENTAL JUSTICE NETWORK, NEUSE RIVERKEEPER FOUNDATION, INC., and WATERKEEPER ALLIANCE, INC., Plaintiffs<br><br>v.<br><br>MR. DONALD TAYLOR and MS. ANNIE TAYLOR, individually and d/b/a TAYLOR FINISHING, MR. JUSTIN T. MCLAWHORN, and MR. AARON MCLAWHORN, Defendants | **DEFENDANT DONALD TAYLOR'S AND DEFENDANT ANNIE TAYLOR'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** |

Pursuant to Local Rule 7.1(e), Defendants Donald Taylor ("Taylor") and Annie Taylor, individually and d/b/a Taylor Finishing (collectively, the "Taylors"), by and through the undersigned attorneys, submit their Response in Opposition to the Motion for Leave to File a Second Amended Complaint ("Motion to Amend") filed by Plaintiffs North Carolina Environmental Justice Network, Neuse Riverkeeper Foundation, Inc., and Waterkeeper Alliance, Inc. (collectively, "Plaintiffs"). The Taylors respectfully submit that the Court should deny Plaintiffs' Motion to Amend based on the undue prejudice that it will cause to the Taylors if granted and Plaintiffs' undue delay in seeking this relief.

# INTRODUCTION[1]

Plaintiffs first filed this action on July 27, 2012, against Taylor Finishing, Inc., Taylor, Frederick A. McLawhorn, Justin T. McLawhorn, and Aaron McLawhorn pursuant to the citizen suit provisions of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, seeking a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, for alleged violations of federal environmental laws by animal feeding operations in Jones County, North Carolina. [ECF Document Entry ("DE") 1.] Subsequently, Plaintiffs filed an Amended Complaint on August 31, 2012 (the "Amended Complaint"), removing Taylor Finishing, Inc., and Frederick A. McLawhorn as defendants and adding as a defendant Annie Taylor, both individually and d/b/a Taylor Finishing with Taylor.[2] [DE 25.]

Plaintiffs allege three separate causes of action against the Taylors under RCRA and the CWA. [DE 25, pp. 2-3, ¶ 3.a-c, and pp. 17-23, ¶¶ 58-96.] Plaintiffs allege a single cause of action against Defendants Justin T. McLawhorn and Aaron McLawhorn (the "McLawhorn Defendants") under RCRA. [DE 25, p. 2, ¶ 3.c., and pp. 21-23, ¶¶ 84-96.]

This matter is now before the Court on Plaintiffs' Motion to Amend under Rule 15(a)(2) of the Federal Rules of Civil Procedure to add yet another defendant, McLawhorn Livestock Farms, Inc. (the "Corporation"). [DE 51.] Adding the Corporation will result in delay and will unduly prejudice the Taylors. Plaintiffs' Motion to Amend, therefore, should be denied.

---

[1] Due to the Court's familiarity with this case, and rather than burdening the Court with extensive legal memoranda, the Taylors hereby adopt and incorporate by reference (to the extent applicable) the Memoranda of Law in Support of each of their Motions to Dismiss and their respective Replies to Plaintiffs' Oppositions to each of their Motions to Dismiss. [ECF-filed Documents 31, 45, 49, and 55.]

[2] Taylor Finishing, Inc., does not now, nor has it ever, existed as a legal entity. [DE 31, p. 7, n. 4.] Upon information and belief, Frederick A. McLawhorn is the same person as Defendant Aaron McLawhorn. [DE 42, p. 7, n. 4.]

## STATEMENT OF RELEVANT FACTS

During the summer of 2010, the Taylors engaged a realtor to locate a farm in eastern North Carolina upon which they could operate a swine finishing farm. [DE 45, p. 8; DE 49, p. 9.] The realtor identified farming property at 508 Ben Banks Road in Pollocksville Township, Jones County, North Carolina (the "Property") that contained sufficient acreage and capacity for their intended purposes. Declaration of Donald Taylor, ¶5, and Declaration of Annie Taylor, ¶ 5, filed contemporaneously herewith, and incorporated herein by reference as Exhibits 1 and 2. The Property was owned by Bobbie F. McLawhorn and wife, Jane P. McLawhorn (the "McLawhorns") Id. Upon information and belief, the farm, as owned by the McLawhorns, was commonly known as the "Banks Farm," and was being operated as a swine finishing farm by the Corporation. [DE 37, p. 2.] Prior to the identification of the Property by their realtor, neither of the Taylors personally knew or had any contact with the McLawhorns. Decl. Taylor, ¶ 6; Decl. Annie Taylor, ¶ 6.

Prior to making an offer to purchase the Property, Taylor visited the Banks Farm to inspect the land and related improvements that the Taylors were considering purchasing from the McLawhorns. Id. at ¶ 7. On June 21, 2010, the Taylors made an offer to purchase the Property and related improvements from the McLawhorns, and the McLawhorns accepted the offer. Id. at ¶ 8. On November 23, 2010, the Taylors purchased from the McLawhorns approximately 219 acres of real property and limited personal property related to the Corporation's operation of the swine finishing farm. Id. at ¶ 9. [DE 55, p. 2, Ex. 1.]

Prior to negotiating the purchase of the Property, neither of the Taylors personally knew the McLawhorn Defendants nor had any association with them or their operation and management of the swine finishing farm. Decl. Taylor, ¶ 11; Decl. Annie Taylor, ¶ 11. The

3

Taylors had no association with the operation and management of the swine finishing farm during the McLawhorns' period of ownership of the Property. Id. at ¶ 10. Further, the Taylors had no knowledge of the Corporation nor had any association with its management of the swine finishing operation located on the Banks Farm. Id. at 12. The Taylors purchased the Property and related improvements from the McLawhorns with absolutely no interaction with the Corporation and no knowledge of its history with the Plaintiffs. Id. [DE 45, p. 8; DE 49, p. 9.] There was no carryover in operation and management of the swine farm operation by the McLawhorns, the McLawhorn Defendants, or the Corporation when the Taylors commenced their own swine finishing operation on the Property. Decl. Taylor, ¶ 13; Decl. Annie Taylor, ¶ 13. The Taylors did not assume any liabilities that the McLawhorns, the McLawhorn Defendants, or the Corporation had for the ownership and operation of the previous swine finishing operation. Id. at 14.

Less than two months later, during the transition from the operation of the Banks Farm by the McLawhorn Defendants and the Corporation to the Taylors' ownership and management of their own swine finishing operation on the Property, Taylor received Plaintiffs' letters dated January 11, 2011 (the "Notice Letter"). [DE 25-1, pp. 1-13; DE 31, pp. 3-6.] The Notice Letter was addressed to Taylor informing him of Plaintiffs' intent to sue the Corporation for violations of the CWA and RCRA.[3] [DE 25-1, pp. 1, 4.] The Notice Letter cited alleged RCRA and CWA violations spanning two years of Plaintiffs' investigation of the Corporation's activities at the Banks Farm. [DE 25-1; pp. 6-10.] The Notice Letter neither addressed nor was

---

[3] The Notice Letter also was addressed to the "Site Manager and Managing Agent of McLawhorn Livestock Farms (Banks Facility)." Neither Taylor nor Annie Taylor was the Site Manager or Managing Agent of the Corporation's activities on the Banks Farm. [DE 55, pp. 5-6.]

4

sent to Annie Taylor, nor did it identify either of the Taylors as persons responsible in any way for any of the violations alleged therein.

When Taylor received the Notice Letter, he and Annie Taylor acted in a commercially responsible manner to protect their new investment by contacting Plaintiffs "to have a meeting in person to fully understand the issues you have with the facility and to explain steps we are taking to clean up and improve the facility from previous management standards." [DE 39-6, p. 3; DE 45, p. 9; DE 49, p. 9.] Over the course of the next several months, Plaintiffs and the Taylors engaged in limited discussions about the management of their own swine finishing operation on the Property. [DE 38, p. 13, n. 6; DE 53, p. 9.]

In the meantime, since purchasing the Property on November 23, 2010, the Taylors have maintained close contact with the regulatory agencies of the State of North Carolina, including the Department of Environment and Natural Resources, Division of Water Quality, and the Department of Agriculture and Consumer Services, Division of Soil and Water Conservation, to ensure compliance with regulatory requirements for raising swine in a finishing operation on the Property. Decl. Taylor, ¶ 20; Decl. Annie Taylor, ¶ 20. To date, neither Taylor nor Annie Taylor has ever received from any regulatory agency of the State of North Carolina any written notice of any regulatory violation relating to the Property or the farming operations conducted on the Property since their purchase on November 23, 2010. Id. at ¶ 21. No action has been taken against either of the Taylors by the United States Environmental Protection Agency or any regulatory agency of the State of North Carolina for any action that has been taken on the Property or in connection with the farming operations conducted on the Property since the Taylors' purchase. Id. at ¶ 22.

5

When Plaintiffs finally filed this action in July 2012, they did so against Taylor and Taylor Finishing, Inc., a corporation that has never existed, as well as against the McLawhorn Defendants. [DE 1.] Plaintiffs did not name the Corporation but instead named the fictitious Taylor Finishing, Inc. In an effort to facilitate the efficient administration of the case, the Taylors' counsel notified Plaintiffs' counsel of the error. [Document 39-2, p. 2.] Plaintiffs then subsequently filed the Amended Complaint, removing Taylor Finishing, Inc., and adding Taylor's wife, Annie Taylor, as a defendant. [DE 25.] Plaintiffs did not name the Corporation in the Amended Complaint. Plaintiffs now desire to amend their Complaint a second time to add the Corporation, about which they have known all along.

Plaintiffs' Motion to Amend should be denied because the addition of the Corporation will cause undue prejudice to the Taylors and delay the resolution of this action.

## ARGUMENT

### I. STANDARD OF REVIEW

Rule 15(a)(2) of the Federal Rules of Civil Procedure allows a party to amend its pleading with the court's leave "when justice so requires." Leave to amend, however, is "not to be granted automatically." Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987), cert. denied, 485 U.S. 977 (1988). Instead, a district court has ample discretion to deny a motion to amend a complaint as long as the court does not "outright refuse 'to grant the leave without any justifying reason.'" Equal Rights Ctr. v. Niles Bolton Assoc., 602 F.3d 597, 603 (4th Cir. 2010), cert. denied, 131 S.Ct. 504 (2010), quoting, Foman v. Davis, 371 U.S. 178, 182 (1962). The United States Supreme Court has determined that "justifying reasons" to deny a motion to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

6

of allowance of the amendment, futility of amendment, etc." (Emphasis added.) Foman, 371 U.S. at 182. In fact, among the factors the Court can consider, "it is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003).

In this case, leave to amend should be denied based on undue prejudice to the Taylors and undue delay by Plaintiffs.

## II. PLAINTIFFS' MOTION TO AMEND SHOULD BE DENIED BASED ON UNDUE PREJUDICE TO THE TAYLORS.

Granting Plaintiffs' Motion to Amend would unduly prejudice the Taylors by allowing Plaintiffs to confuse the trier of fact by combining the various claims they have against the Taylors with the activities of the Corporation and its employees, the McLawhorn Defendants, at the Banks Farm. Plaintiffs will dilute the line between parties whose alleged liability is independent, wholly divided by time and ownership of separate swine finishing operations. It also will be prejudicial to the Taylors by substantially and unjustifiably increasing the cost of this action to the Taylors by requiring the Taylors to participate as bystanders in protracted discovery, expert witness, and pre-trial and trial proceedings that involve claims arising out of the Corporation's farming activities for which only the Corporation may have liability but for which the Taylors have no legal responsibility. Therefore, the Motion to Amend should not be allowed.

Undue prejudice to the opposing party warrants denial of a motion to amend. Undue prejudice has been found where the amendment "brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint." (Emphasis added.) Conroy Datsun, Ltd. v. Nissan Motor Corp., 506 F. Supp. 1051, 1054 (N.D. Ill. 1980), quoting, A. Cherney Disposal Co. v. Chicago & Suburban Refuse

7

Disposal Corp., 68 F.R.D. 383, 385 (N.D. Ill. 1975). In such cases, a motion for leave to amend "should be denied because the prejudice to the defendant outweighs the right to have the case tried on the merits." Id. See Hess v. Gray, 85 F.R.D. 15, 20 (N.D. Ill. 1979)("'The central inquiry in each case is whether an amendment would result in undue prejudice to the defendant.'" *quoting* Alberto-Culver Company v. The Gillette Company, 408 F. Supp. 1160, 1161 (N.D. Ill. 1976).)[4] See also 6 Wright, Miller & Kane, Federal Practice and Procedure § 1487 (3d ed.)(If the court "determines that the proposed amendment would result in defendant being put to added expense and the burden of a more complicated and lengthy trial or that the issues raised by the amendment are remote from the other issues in the case and might confuse or mislead the jury, leave to amend may be denied.")

Prejudice to the Taylors will result if the Motion to Amend is granted. Plaintiffs already have attempted to join the claims they have against the McLawhorn Defendants with their allegations against the Taylors by lumping together as "Defendant Facility" or "the facility" the farming operations conducted by the McLawhorn Defendants and the Corporation on the Banks Farm prior to November 23, 2010, with separate farming activities conducted by the Taylors on the Property. [DE 1; DE 25; DE 38; DE 42; DE 52, pp. 3, 6; DE 53, p. 5.] Plaintiffs named the Corporation as the alleged violator and asserted liability against the "McLawhorn Banks facility" in the Notice Letter, yet named neither the Corporation nor the McLawhorn Banks facility as a defendant in the Complaint. [DE 25-1.] Instead, Plaintiffs attempt to charge

---

[4] In Hess v. Gray, supra, the court granted the plaintiff's motion to amend to add two additional parties, but also allowed the defendants' motion to sever the claims against joint-tortfeasors under Rule 21 of the Federal Rules of Civil Procedure to allow for transfer of venue. Similarly, the claims asserted against the McLawhorn Defendants and, if added as a Defendant, the Corporation should be severed from the claims asserted against the Taylors, both for discovery and trial purposes.

8

the Taylors with liability for both periods of ownership under the false term "Defendant Facility." [DE 1; DE 25, pp. 1, 10-11.] This is unsupported by fact or law.

Clearly, "the facility" is not an entity with the capacity to be sued. However, Plaintiffs continue to assert claims against "the facility" in their Motion to Amend without offering legal support for their position that a farm labeled as a facility, which is not a legal entity, can be sued. [DE 52, p. 6.] Despite their ongoing assertions that they "intended to sue the Facility," Plaintiffs have attempted to sue individuals and corporations involved at different times with the management of different swine finishing farms operating on the Property. [DE 53, p 16.][5]

To further illustrate the undue prejudice to the Taylors, Plaintiffs have a history of such sleight of hand. Plaintiff Waterkeeper Alliance, Inc. (the "Waterkeeper Alliance"), recently was embroiled in a lawsuit it filed in 2010 in U.S. District Court in Maryland against a family farm owned and operated by Alan and Kristin Hudson (the "Hudsons") and their poultry integrator, Perdue Farms Incorporated ("Perdue"), for CWA violations similar to those alleged against the Taylors. Assateague Coastkeeper, et al. v. Alan and Kristin Hudson Farm, et al, 727 F. Supp. 2d 433, 434 (D. Md. 2010).[6] The bench trial concluded on November 30, 2012, and presiding Judge William N. Nickerson entered judgment against the Waterkeeper Alliance and in favor of the Hudsons and Perdue on December 20, 2012.[7]

---

[5] Both RCRA and the CWA only allow citizen suits against individuals, corporations, state agencies and the Environmental Protection Agency. See 42 U.S.C. § 6972 (b)(1) and (2) and 40 CFR 254.3(a); 33 U.S.C. § 1365(b)(1) and 40 CFR 135.2(a)(1).

[6] Original plaintiffs Kathy Phillips, Assateague Coastkeeper, and Assateague Coastal Trust were dismissed from the action for failure to satisfy the citizen suit notice requirements of the CWA, leaving the Waterkeeper Alliance as the sole remaining plaintiff. Assateague at 438.

[7] Waterkeeper Alliance, Inc. v. Alan and Kristin Hudson Farm et al., WMN-10-487, Documents 210 and 211, copies attached for the Court's convenience as Exhibits 3 and 4.

In March 2012, Judge Nickerson issued an Order denying the parties' cross-motions for summary judgment and the defendants' motions to strike expert testimony "with some reluctance." A copy of Judge Nickerson's Order is attached as Exhibit 5. In his Order, Judge Nickerson made "disturbing" observations about the behavior of the Waterkeeper Alliance as a litigant:

> The Court also notes that Plaintiff appears strategically selective in the manner in which it has defined the offending Concentrated Animal Feeding Operation (CAFO) … <u>Plaintiff makes this statement, however, because earlier in its memorandum it equated "the Alan and Kristin Hudson Farm" with "the Facility," and, furthermore, seemed to limit the scope of "the Facility" to an "animal feeding operation" located within the larger "Ro-Mar-Len Farm." Plaintiff then indicates that "the Facility" includes the two poultry houses, the manure storage shed, and the two-bin composter: all structures connected with the chicken operation.</u> For most of its briefing, Plaintiff limits the scope of the CAFO to the chicken operation.
>
> Although delegated to a footnote, <u>Plaintiff begins to argue in its Opposition, however, that the Hudson's cattle operation might also be part of the CAFO</u>. While minimizing throughout its briefing of the summary judgment motions any contribution from cow manure to the pollution discharge, Plaintiff wants to "retain the right," should its motion be denied, to argue that "discharges from the cows are, indeed, violations of the CWA." Acknowledging the contribution of the cow manure at this stage of the litigation, of course, would be inconsistent with Plaintiff's goal of extending liability to Perdue. The Court notes it would also seem to be beyond the scope of the Notice of Intent which was clearly limited to poultry waste.

(Emphasis added.)(Internal citations omitted.) <u>Waterkeeper Alliance, Inc. v. Alan and Kristin Hudson Farm et al</u>, Civil Action No. WMN-10-487, Document 143, p. 3 (Exhibit 5).

In his final Memorandum and Opinion, Judge Nickerson also criticized the Waterkeeper Alliance for attempting to cast the same kind of broad net of liability over Perdue, when there was no basis in fact or law for making this attempt. <u>Waterkeeper</u>

10

Alliance, Inc. v. Alan and Kristin Hudson Farm et al, Civil Action No. WMN-10-487, Document 211, p. 47-49 (Exhibit 4).

Allowing Plaintiffs to add the Corporation would perpetuate and facilitate the Waterkeeper Alliance's technique of obfuscating who is, or what actions are, responsible for various alleged violations of the CWA and RCRA. Allowing Plaintiffs to add the Corporation expands their treatment of the "Defendant Facility," and would unduly prejudice the Taylors by incorrectly combining activities of the Corporation and the Taylors on the Property, when such activities are separate and sequential, not contemporaneous and when any liability for such activities is separate and independent, not joint and several. Allowing the Corporation to be added as a Defendant will expose the Taylors to the risk of being incorrectly associated with and held responsible for actions taken by the Corporation. The Taylors respectfully submit that they should not be prejudiced in this way.

Additionally, if Plaintiffs are allowed to add the Corporation as a Defendant, this likely will lead to substantial discovery, expert witness activity, and pre-trial and trial proceedings relating to actions taken by the Corporation in operating a farm on the Property before the Property was purchased by and transferred to the Taylors. The Taylors have no interest in or responsibility for such actions. The Taylors also respectfully submit that they should not be prejudiced by being required to bear the additional burden and significant cost of being a bystander while Plaintiffs and the Corporation engage in a dispute over issues that affect only Plaintiffs and the Corporation.

This Court has the discretion to impose conditions on the allowance of the Motion to Amend "as an appropriate means of balancing the interests of the party seeking the amendment and those of the party objecting to it." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1486. However, the Taylors submit that they cannot be protected by the use of conditions in this case. The Taylors did not purchase the Corporation; they only purchased land and equipment from the McLawhorns. Decl. of Taylor, ¶ 9; Decl. Annie Taylor, ¶ 9. The Taylors did not assume any liabilities of the McLawhorns, the McLawhorn Defendants or the Corporation as owners or managers of the former swine farm operations. Id. at ¶ 14. Yet, the Waterkeeper Alliance's behavior in similar litigation is a clear indication that the Taylors, like the Hudsons, will suffer the extensive added expense and burden of additional discovery and a more complicated and lengthy trial should the Corporation be added as a party. Moreover, Plaintiffs will be able to confuse the issues and to muddle responsibilities and activities across various parties based on their position that the "Defendant Facility" is liable for it all.

### III. PLAINTIFFS' MOTION TO AMEND SHOULD BE DENIED FOR UNDUE DELAY BY PLAINTIFFS.

A motion to amend under Rule 15 "'should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule.'" Deasy v. Hill, 833 F.2d 38, 41 (4th Cir. 1987), cert. denied, 485 U.S. 977 (1988), quoting, 6 Charles Alan Wright & Arthur A. Miller, Federal Practice & Procedure § 1488 (1971). Also, "[i]t is incumbent upon the movant to show that the information upon which the new claim is based was unknown or unavailable prior to the filing of the motion." Conroy Datsun, Ltd., 506 F. Supp. at 1054. Accordingly, leave to amend has been denied where the movant knew about the facts underlying the amendment but unduly delayed in

12

seeking leave to amend.  See Woodson v. Fulton, 614 F.2d 940, 942-93 (4th Cir. 1980)(in racial discrimination case, motion to amend complaint to add a First Amendment claim was properly denied where the plaintiff's attorney "had been aware" of this claim "for some time"; court noted that, under Supreme Court's Foman standard, leave to amend "may be denied for undue delay"). Plaintiffs' Motion to Amend should be denied because they have known about the Corporation and could have named it as a defendant when they filed the original Complaint.

*First*, Plaintiffs seek to amend their Complaint a second time to add the Corporation as a party when they knew of the Corporation as far back as when they began investigating activities at the Banks Farm.  More than two years later, Plaintiffs' specifically named the Corporation in the Notice Letter as the alleged violator they intended to sue.  [DE 25-1, pp. 1 and 4; DE 25-2, p. 6.]  Clearly, information about the Corporation and its involvement was not unknown or unavailable to Plaintiffs when they filed the Motion to Amend.  Plaintiffs' allegations that after 18 months of "pre-suit negotiations" they still did not know the proper entities or individuals to sue are disingenuous because clearly they knew about the Corporation. [Document 53, pp. 8-9.]

*Second*, Plaintiffs' excuse for not including the Corporation in either the Complaint or the Amended Complaint because the Corporation was administratively dissolved is ineffective.  Plaintiffs argue that only now can they include the Corporation in the lawsuit because "the McLawhorn Defendants had revived it effective September 13, 2012." [DE 52, p. 5.] At best, Plaintiffs' description of the status of the Corporation is inartfully stated and at worst is no basis under which they should be allowed to amend the Complaint a second time.

The Corporation was reinstated under the provisions of the North Carolina Business Corporation Act.  N.C. Gen. Stat. § 55-14-22.  A true and accurate copy of the

13

Administrative Reinstatement of the Corporation by the North Carolina Department of the Secretary of State is attached hereto and incorporated herein as Exhibit 6. The Administrative Reinstatement has an effective date of December 15, 2010. Id., p. 2. The Corporation's Administrative Reinstatement has the effect of treating the Corporation as if it was never dissolved because once reinstatement is effective "it relates back to and takes effect as of the date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred." N.C. Gen. Stat. § 55-14-22(c).

Further, even if the Corporation had remained dissolved, it still would maintain its existence for the purposes of winding up its affairs, and as such always retained the capacity to be sued by Plaintiffs. N.C. Gen. Stat. § 55-14-05(b)(5). See State Ex Rel. Howes v. W.R. Peele, Sr. Trust, 876 F. Supp. 733, 738 (E.D.N.C. 1995)(court found that dissolved corporation still amenable to suit under North Carolina Business Corporation Act Section 55-14-05 for liability under the Comprehensive Environmental Response, Compensation, and Liability Act even though it failed to file a certificate of completed liquidation under the state's former Business Corporation Act.) Thus, Plaintiffs' statement that the Corporation is "revived" (i.e. brought back from the dead) is wholly inaccurate because it continued to exist for the purposes of suing or being sued. [DE 52, p. 6.] The fact that the Corporation was administratively dissolved would not alone have been a defense to Plaintiffs' claims. Plaintiffs could have named the administratively dissolved Corporation as a defendant when they filed the Complaint and the Amended Complaint. Plaintiffs should not be allowed to do so now.

Plaintiffs' delay in seeking to include the Corporation as a Defendant appears to be a belated attempt by Plaintiffs to salvage some claim by avoiding the potential consequence of

having the McLawhorn Defendants' well-supported Motion to Dismiss granted. This delay is undue and, the Taylors respectfully submit, should not be countenanced by the Court.

## **CONCLUSION**

For the reasons set forth above, the Taylors respectfully request that this Court deny Plaintiffs' Motion for Leave to File Second Amended Complaint.

This the 21st day of December, 2012.

>　/s/ Donalt J. Eglinton
> Donalt J. Eglinton
> N.C. State Bar I.D. No.: 010314
> email: dje@wardandsmith.com
> Frank H. Sheffield
> N.C. State Bar I.D. No.: 016398
> email: fhs@wardandsmith.com
> Amy P. Wang
> N.C. State Bar I.D. No.: 023322
> email: apw@wardandsmith.com
> For the firm of
> Ward and Smith, P.A.
> Post Office Box 867
> New Bern, NC  28563-0867
> Telephone:  252.672.5400
> Facsimile:  252.672.5477
> Attorneys for Defendants Donald Taylor and Annie Taylor, individually and d/b/a Taylor Finishing

15

Case 4:12-cv-00154-D   Document 56   Filed 12/21/12   Page 15 of 16

CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2012, I electronically filed **DEFENDANT DONALD TAYLOR'S AND DEFENDANT ANNIE TAYLOR'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Plaintiffs North Carolina Environmental Justice Network, Neuse Riverkeeper Foundation, Inc., and Waterkeeper Alliance, Inc., c/o their attorneys of record, Stanley B. Green, Esq., Chinelo E. Dike-Minor, Esq., Kelly H. Foster, Esq., Michael T. Lee, Esq., Bethany A. Davis Noll, Esq., and Lee Knight Caffery, Esq., and Defendants Mr. Frederick A. McLawhorn, Mr. Justin T. McLawhorn, and Mr. Aaron McLawhorn, c/o their attorneys of record, John R. King, Esq. and Lars P. Simonsen, Esq.

*/s/ Donalt J. Eglinton*
Donalt J. Eglinton
N.C. State Bar I.D. No.: 010314
email: dje@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 867
New Bern, NC 28563-0867
Telephone: 252.672.5400
Facsimile: 252.672.5477
Attorneys for Defendants Donald Taylor and Annie Taylor, individually and d/b/a Taylor Finishing

040232-00002
ND: 4816-3960-5266, v. 4

16

Case 4:12-cv-00154-D   Document 56   Filed 12/21/12   Page 16 of 16