UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA (EASTERN DIVISION)
Civil Action No. 4:12-cv-00154

| | |
|---|---|
| North Carolina Environmental Justice Network, Neuse Riverkeeper Foundation, Inc., and Waterkeeper Alliance, Inc.<br><br>        Plaintiffs,<br><br>    v.<br><br>Mr. Donald Taylor and Ms. Annie Taylor, individually and d/b/a Taylor Finishing, McLawhorn Livestock Farm, Inc., Mr. Justin T. McLawhorn, and Mr. Aaron McLawhorn,<br><br>        Defendants. | Fed. R. Civ. P. 37<br>Fed. R. Civ. P. 26<br>Fed. R. Civ. P. 34 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR FIRST MOTION TO COMPEL ACCESS TO THE TAYLOR FINISHING PROPERTY**

| | |
|---|---|
| DEBEVOISE & PLIMPTON LLP<br>Michael T. Leigh<br>Johanna N. Skrzypczyk<br>Jehan Pernas *(of counsel)*<br>Richard T.R. Harper *(of counsel)*<br>Peter Clarke *(of counsel)*<br>919 Third Avenue<br>New York, New York 10022<br><br>*Counsel for North Carolina Environmental Justice Network* | WATERKEEPER ALLIANCE, INC.<br>Kelly Hunter Foster<br>Gray Jernigan *(of counsel)*<br>17 Battery Place, Suite 1329<br>New York, New York 10004<br><br>*Counsel for Waterkeeper Alliance, Inc. and Neuse Riverkeeper Foundation, Inc.*<br><br>STRAUCH, GREEN & MISTRETTA, P.C.<br>Stanley B. Green<br>530 North Trade Street, Suite 303<br>Winston-Salem, North Carolina 27101<br><br>*Counsel for all Plaintiffs*<br>*Local Civil Rule 83.1 Counsel* |
| June 20, 2014 | |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND................................................................. 2

ARGUMENT ............................................................................................................................... 4

    I.    Plaintiffs' Proposed Inspection and Sampling at the Facility Seeks Relevant Discovery
and is Narrowly Tailored to Their Claims. ........................................................................ 4

    II.    The Taylors' Objections Fail to Satisfy Their Burden to Show Plaintiff's Proposal
is Unreasonable or Unduly Burdensome. .......................................................................... 7

    III.    Discovery Should Be Extended so that Plaintiffs Can Inspect and Sample at the
Facility Over the Season During Which Swine Waste Is Disposed of on the
Property. ............................................................................................................................. 9

CONCLUSION .......................................................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**

*Ark. Game & Fish Comm'n v. United States*, 74 Fed. Cl. 426 (Ct. Cl. 2006) ..........................7, 10

*Martin v. Reynolds Metals Corp.*, 297 F.2d 49 (9th Cir. 1961)........................................................7

*McDonald v. Kellogg Co.*, No. 08-2473,
  2011 WL 484191 (W.D. Kan. Feb. 7, 2011) ............................................................................8

*Scruggs v. Int'l Paper Co.*, 278 F.R.D. 698 (S.D. Ga. 2012) ............................................................7

*Teer v. Law Engineering & Environ'l Servs., Inc.*,
  176 F.R.D. 206 (E.D.N.C. 1997)...............................................................................................4

*United States v. Acquest Wehrle, LLC*, No. 09-CV-637,
  2010 WL 1708528 (W.D.N.Y. Apr. 27, 2010)......................................................................6, 9

*Versatile Metals, Inc. v. Union Corp.*, No. 85-4085,
  1986 WL 8720 (E.D. Pa. 1986)..................................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26..............................................................................................................................5

Fed. R. Civ. P. 34..............................................................................................................................4

Fed. R. Civ. P. 37..............................................................................................................................1

M. Cook, J. Hathaway & R. Evans, *The Impact of Swine Lagoon Seepage on
  Shallow Groundwater Quality: Remediation Through Lagoon Closure and
  Pumping*, ASAE Vol. 51, No. 3 (2008) .....................................................................................6

# PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv), Plaintiffs North Carolina Environmental Justice Network, Waterkeeper Alliance, Inc., and Neuse Riverkeeper Foundation, Inc. move the Court for an order compelling Defendants Donald and Annie Taylor, individually and d/b/a "Taylor Finishing" ("Taylors"), to permit entry, inspection, measuring, surveying, photographing, testing, and sampling of the swine concentrated animal feeding operation ("Facility") at issue in this case under Rule 34 of the Federal Rules of Civil Procedure.

Plaintiffs have been attempting to access the Facility at issue in this case to inspect, photograph, and sample waste, soil, surface water, and groundwater over a six-month period since January 22, 2014. Plaintiffs have been unable to obtain access due to the Taylors' unreasonable objections and ever-shifting demands that Plaintiffs prove to the Taylors' satisfaction that the areas or environmental media to be sampled are causing pollution and violate the Clean Water Act ("CWA") and Resource Conservation and Recovery Act ("RCRA").

Plaintiffs have attempted in good faith to resolve this matter without the need for court intervention.[1] But because the Taylors continue to object to Plaintiffs' reasonable requests to collect information at the Facility that is patently relevant to the claims in this litigation, Plaintiffs seek an Order compelling the Taylors to comply with Plaintiffs' revised Rule 34 request in the attached proposed order, modified to address the Taylors' reasonable demands, and extending the discovery period until Plaintiffs' inspection and sampling is complete.

---

[1] In an effort to resolve their dispute, the parties exchanged letters on May 2, May 23, and June 3, 2014 and engaged in telephone conversations on May 29, June 4, June 5, June 13, and June 18, 2014. (Exs. C–G.)

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs seek to address pollution and endangerment to human health and the environment caused by the illegal management, discharge, and disposal of swine waste and associated pollutants by the current and former owners of the Facility in violation of the CWA and RCRA. (Second Am. Compl. ("Complaint").) Plaintiffs allege, *inter alia*, that the Defendants have caused pollutants, including nitrogen, phosphorus, and bacteria, to be released onto lands and into surface waters and groundwater on and surrounding the Facility. (*Id.* ¶ 1.)

On January 22, 2014, in order to collect evidence related to the waste management practices at the Facility, the sources of the pollution, the lands and waters alleged to be impacted by the Defendants' practices, and the pathways for transporting pollution offsite, Plaintiffs served on the Taylors a request for access to inspect, measure, survey, photograph, test, and sample the Facility at issue in this case, including: (*i*) the Facility's drainage infrastructure, (*ii*) the Facility's waste and waste-management systems, (*iii*) surface water and groundwater at the Facility, and (*iv*) soils where waste has been applied.

Plaintiffs requested, over a six-month period, weekly access to sample: groundwater at 9 identified locations around the swine waste lagoons; surface water at 15 identified locations and at any other surface water conveyances discovered during inspection; waste in the lagoons; and soil on 3 fields on 3 occasions. Plaintiffs further requested access on other occasions upon request with 24-hour notice to the Taylors. To complete inspections and sampling within the discovery schedule and collect samples representative of conditions during the spring and summer seasons, Plaintiff requested access from February 17, 2014 through August 8, 2014.

Two-and-half months after Plaintiffs' request, the Taylors responded on April 16, 2014, primarily with repetitive, vague, and generalized objections to Plaintiff's Rule 34 Request, refusing *any* access related to Plaintiff's CWA claims, and proposing an alternative, one-time

sampling event limited to soil and surface water premised on Plaintiffs identifying areas constituting "open dumps" or "imminent and substantial endangerment[s]" under RCRA. (Ex. B at 15.) Plaintiffs responded to the Taylors' on May 2, 2014 and sought a meet and confer the following week to attempt to resolve the issues without the need for court intervention. (Ex. C.)

The Taylors responded that they would be unable to meet and confer for nearly another month—until May 29, 2014. Further, on May 23, 2014, the Taylors sent Plaintiffs a letter demanding that Plaintiffs meet two new evidentiary standards not included in their Responses and Objections to Plaintiffs' Rule 34 Request: (*i*) demonstrate to their satisfaction that groundwater has been affected by the Taylors' use of the property, and (*ii*) demonstrate to their satisfaction that there has been a discharge to surface waters from the property since the Taylors acquired it.

During the meet and confer on May 29, 2014, in order to reach agreement with the Taylors as soon as possible with minimal impact on the discovery schedule, Plaintiffs agreed to all of the Taylors' particularized demands regarding biosecurity, who would have access to the Facility, indemnification,[2] split-sampling, and a protective order, and scaled back their requested access by proposing to take fewer total samples, on a more limited timetable, and with less frequent access than they originally had proposed. (*Compare* Ex. A *with* Ex. E at 2–3.) Plaintiffs objected to the Taylors' demand for evidence as to how the locations at which Plaintiffs requested inspection and sampling support their CWA and RCRA claims.

Despite Plaintiffs' conciliatory efforts, the Taylors continued to deny Plaintiffs' requested access and added yet two more evidentiary demands of Plaintiffs: (*i*) demonstrate that the

---

[2] Plaintiffs amended slightly the Taylors' proposed indemnification condition to reflect that Plaintiffs would indemnify the Taylors for any loss or harm *Plaintiffs* suffer as a result of their entry onto the Taylors' property.

3

Taylors have applied swine waste in excess of amounts permitted by the State of North Carolina; and (*ii*) demonstrate that there has been a breach, structural failure, or spill from a swine waste lagoon at the Facility.

Although Plaintiffs believe they are allowed to enter the Facility without proving the merits of their claims to the Taylors' satisfaction, on June 3, Plaintiffs provided representative documents related to the locations at which they requested to sample, and articulated how their requested sampling is relevant to the claims in this case. Despite these efforts and additional meet and confers on June 4 and 5, the Taylors continue to object to Plaintiffs' Rule 34 Request—agreeing only to limited soil, waste lagoon, and surface water sampling on two occasions.

Plaintiffs seek an Order from the Court directing the Taylors to permit access to the Facility according to the attached proposed order, which includes modifications to accommodate the Taylors' few particularized objections. Given the delay caused by the Taylors' unreasonable objections to and limitations on Plaintiffs' discovery, Plaintiffs also seek to extend the discovery schedule to provide adequate time for them to collect representative sampling on the Facility during the period of time when the activities that are at the crux of Plaintiffs' case occur.

**ARGUMENT**

I. **Plaintiffs' Proposed Inspection and Sampling at the Facility Seeks Relevant Discovery and is Narrowly Tailored to Their Claims.**

Rule 34 expressly permits Plaintiffs to "inspect, measure, survey, photograph, test, or sample" the property or any designated object or operation on it in order to evaluate the source, nature, and extent of pollution at the Facility. Fed. R. Civ. Proc. 34(1)(2); *Teer v. Law Engineering & Environ'l Servs., Inc.*, 176 F.R.D. 206, 207 (E.D.N.C. 1997). "This rule is designed to permit 'the broadest sweep of access.'" *Morales v. Turman*, 59 F.R.D.157, 158 (E.D. Tex. 1972). "Relevancy" for federal discovery purposes is broader than relevancy at trial

4

and includes discovery that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b).

Plaintiffs' allege that the past and present owners of the Facility have and, the current owners continue to, illegally manage, dispose of, and discharge swine waste and associated pollutants on and from the Facility in violation of the CWA and RCRA. Plaintiffs specifically identified the contaminants at issue, the alleged practices that cause adverse environmental impacts, the alleged environmental impacts both at the Facility and at offsite locations, and the alleged surface and subsurface pathways through which contaminates transmit into the environment. (Complaint ¶¶ 34–58.)

Plaintiffs' requested access is reasonably and narrowly aimed at obtaining information about the Facility property and operations relevant to the claims at issue in this case. All of the information Plaintiffs seek is relevant to their allegations, including, but not limited to, allegations that:

- The Facility and the land where swine waste is applied is traversed by drainage ditches that carry water and associated pollutants from the Facility into the Long Branch which in turn flows to the Trent River and then to the Neuse River.

- The Facility has disposed, and is continuing to dispose of large volumes of swine waste in excess of any legitimate crop fertilization requirement, on bare ground, directly into water, into drainage ditches, and generally in a manner that causes runoff of waste, discharges of pollutants, and contamination of groundwater.

- The Facility has a pattern of historic and continuing illegal discharges and releases of pollutants from swine waste to land, groundwater, and surface waters of the Neuse River Basin that pose an imminent and substantial endangerment to human health and the environment in the Trent and Neuse River watersheds.

Plaintiffs' Rule 34 request describes with reasonable particularity the places they seek to inspect and the locations at which sampling will occur, and specifies reasonable times of access, the frequency of sampling, and provides for advance notice.

Proving Plaintiffs' CWA and RCRA claims against the past and present owners of the Facility requires fact-intensive analysis.[3] Plaintiffs in a CWA and RCRA case typically would present expert reports and testimony, and technical evidence in aid of their claims. *Cf. United States v. Acquest Wehrle, LLC*, No. 09-CV-637C(F), 2010 WL 1708528, *2 (W.D.N.Y. Apr. 27, 2010) (access, excavation, and sampling necessary to prosecute CWA claims); *Ark. Game & Fish Comm'n v. United States*, 74 Fed. Cl. 426, 432 (Ct. Cl. 2006) (installation of flood detection devices on land necessary to claims and defenses in case).

Because the discovery Plaintiffs seek is relevant to the core issues in this litigation, Plaintiffs would be substantially prejudiced if they were denied the access they are entitled to in order to collect soil and swine waste samples, monitor surface and groundwater over time, and physically inspect the property and its operations and equipment. *See* M. Cook, J. Hathaway & R. Evans, *The Impact of Swine Lagoon Seepage on Shallow Groundwater Quality: Remediation Through Lagoon Closure and Pumping*, ASAE Vol. 51, No. 3, at 891–900 (2008) (5-year hydrologic and groundwater investigation triggered by elevated nutrient levels near swine waste lagoon in North Carolina suggested site was potential source of pollution); *Ark Game & Fish Comm'n*, 74 Fed. Cl. at 432 (6-month flood monitoring permitted); *Versatile Metals, Inc. v. Union Corp.*, No. 85-4085, 1986 WL 8720, *2–3 (E.D. Pa. Aug. 8, 1986) (sampling and drilling on property allowed over extended period of time).

---

[3] Plaintiffs' Complaint demonstrates the extensive factual investigation of the Facility Plaintiffs undertook prior to filing this litigation. The Complaint identifies (*i*) 36 dates on which water samples show elevated levels of fecal coliform in water running downstream from the Facility, (*ii*) 42 dates on which water samples show elevated nutrients in water running downstream from the Facility, (*iii*) 9 dates on which photographs show discharges of swine waste from the Facility into the adjacent Long Branch creek, and (*iv*) 10 dates on which photographs show land application of swine wastewater at rates greater than necessary for crop fertilization, causing "ponding" and over-saturation of fields with swine wastewater. (Compl. ¶¶ 53–57.)

**II.     The Taylors' Objections Fail to Satisfy Their Burden to Show Plaintiff's Proposal is Unreasonable or Unduly Burdensome.**

In a motion to compel, "[w]here the discovery sought is relevant on its face, the party resisting discovery has the burden to support its objection." *Scruggs v. Int'l Paper Co.*, 278 F.R.D. 698, 701 (S.D. Ga. 2012). Rather than sustain their burden of advancing a particularized showing of how undue burden, danger, or some other reason outweighs Plaintiffs' request, the Taylors primarily advanced repetitive, vague, and generalized objections to Plaintiffs' Rule 34 Request, which are insufficient grounds to prevent access under Rule 34. *Id.* at 700, note 3.

The bulk of the Taylors' objections were unaccompanied by any specific, particularized reasons that the discovery sought was irrelevant or would unduly burden the Taylors in a manner that outweighed the importance of the discovery Plaintiffs sought. For example, the Taylors failed to articulate how sampling on a weekly basis would burden them; the simple task of allowing foreseeable access is not an unreasonable burden. In any event, during their many attempts to negotiate a resolution, Plaintiffs reduced their requested access to every other week.

The Taylors also unreasonably sought to limit Plaintiffs' access to collecting evidence only as to conditions Plaintiffs complain about that were caused solely by the Taylors, and demanded that Plaintiffs' demonstrate "factual predicates" for the locations at which Plaintiffs propose to take soil, surface water, and groundwater samples. And even upon such a showing by Plaintiffs, the Taylors stated they would permit only limited soil, lagoon, and surface water sampling on two occasions.

Rule 34 does not limit Plaintiffs' access to the Facility to only one or two occasions, s*ee Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 57 (9th Cir. 1961), and the Taylors have failed to articulate any basis for limiting sampling to two events in this case.

1000287398v1

Moreover, the Taylors are "not at liberty to dictate how plaintiffs should gather information to support their case." *McDonald v. Kellogg Co.*, No. 08-2473-JWL, 2011 WL 484191, *2 (D. Kan. Feb. 7, 2011). The Taylors' demand that they be convinced of the merits of Plaintiffs' claims in order for Plaintiffs to access the Facility property is unreasonable and unsupported by law. The Taylors' demand for proof would set a dangerous precedent: If permitted, every party could object to the collection of discoverable evidence until the party seeking the evidence satisfied a burden of proof created by the objecting party.

Rule 34 also does not limit Plaintiffs' sampling to conditions attributable solely to the Taylors; Plaintiffs are entitled to collect evidence for all of their claims, including those against the former owners of the Facility. And Rule 34 does not permit the Taylors to decide the manner in which Plaintiffs may conduct sampling, for example, by permitting only 8 soil samples on two occasions despite North Carolina Department of Agriculture manuals that require 15-20 core soil samples for each area sampled. (Exs. H, I.) Any objections the Taylors believe they have concerning the sampling protocols followed by Plaintiffs can be addressed at trial on cross-examination of Plaintiffs witnesses.

The particularity of the allegations in Plaintiffs' Complaint, the numerous water sample results and photographs taken from public access points in the immediate vicinity of the property that Plaintiffs have produced in discovery, and the above-and-beyond showing Plaintiffs' counsel made in identifying exemplar documents from the record, (Ex. G), demonstrate that Plaintiffs' requested access is narrowly tailored to collect evidence relevant to their claims. The Taylors may disagree with the locations at which Plaintiffs propose to sample, and may disagree about what sampling to date and any sampling taken on the Facility shows, but those disagreements

8

concern the merits of Plaintiffs' claims, which Plaintiffs are not required by the law or rules of discovery to prove *before* and *in order to* gain access to discoverable evidence.

**III.    Discovery Should Be Extended so that Plaintiffs Can Inspect and Sample at the Facility Over the Season During Which Swine Waste Is Disposed of on the Property.**

In agreeing to an initial 30-day extension to respond to discovery requests, counsel for the Taylors confirmed that they would not object to a 30-day extension of the overall discovery schedule. Plaintiffs ask the Court to grant this unopposed 30-day extension.

By mutual agreement, the parties' time for responding to discovery requests has been extended several additional times. Plaintiffs required the extra time to respond to extensive document requests and interrogatories, resulting in nearly 3000 documents produced to date. The Taylors requested that they receive reciprocal extensions to respond to Plaintiffs' discovery requests. Plaintiffs assumed that the Taylors had a legitimate need for the additional time.

Because Plaintiffs' claims are related to discharge and release of pollutants to soils, surface water, and groundwater associated with the land application of swine waste and leaching or leaking of swine waste from overapplication to fields or from lagoons, they require access to inspect and sample at the Facility during the spring, summer, and early fall when crops are grown and swine waste is land-applied on the property. *Cf. Acquest Wehrle*, 2010 WL 1708528, *1 (permitting entry upon land during relevant season). Suitable months for Plaintiffs to access the Facility run only from February or March through October; inspecting the Facility and attempting to collect samples during the late fall and winter months when land application of swine waste is minimal would largely be futile efforts at collecting information undoubtedly relevant—and very likely material—to the parties' claims and defenses in this litigation.

But because Plaintiffs' access to the Facility has been unreasonably delayed by the Taylors' unsupported objections, unreasonable requests for reciprocal extensions of time to

respond to Plaintiffs' Rule 34 request, unavailability to meet and confer for nearly a month, and demands for evidentiary support for any sampling, this matter has reached an impasse and by the time it is resolved Plaintiffs' will have missed all or nearly all of the land-application season.

As such, discovery in this case should be extended as outlined in the propose order to permit Plaintiffs the reasonable and necessary access they are entitled to during any portion of the 2014 land application season remaining at the resolution of this motion, and the spring and summer 2015 land-application season.[4] *See Ark. Game & Fish Comm'n*, 74 Fed. Cl. at 434 (6-month discovery extension to install flood detection devices granted because information to be gathered was "crux" of case). Without an extension of the discovery schedule to permit Plaintiffs to inspect and sample on the Facility property during spring and summer 2015, Plaintiffs would be prejudiced by not being able to conduct sampling over an adequate period of time and being required to inspect and sample during a period of time when the swine waste disposal practices at issue in this case are not being carried out on the property, the lands and waters may be frozen, and the hydrologic conditions are not fully representative of conditions at the site when waste is applied.

## CONCLUSION

Plaintiffs' motion to compel should be granted, the discovery period should be extended for the period of time necessary to conduct relevant discovery, and the Taylors should be ordered to grant Plaintiffs' access to the property as proposed in Plaintiffs' revised proposal.

---

[4] Assuming Plaintiffs are able to get access in July, Plaintiffs could complete three months of sampling this fall then resume sampling for an additional three month s when land application resumes in March 2015.

Dated: June 20, 2014

  Respectfully Submitted,

 /s/  Michael T. Leigh
Michael T. Leigh, NY State Bar No. 4873394
Johanna N. Skrzypczyk, NY State Bar No. 4918371
Jehan Pernas, NY State Bar No. 4930335
*(of counsel)*
Richard T.R. Harper, NY State Bar No. 5120118
*(of counsel)*
Peter Clarke, NY State Bar No. 5147905
*(of counsel)*
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022

*Counsel for North Carolina Environmental Justice Network*

 /s/  Kelly Hunter Foster
Kelly Hunter Foster, OK State Bar No. 17067
Gray Jernigan, NC State Bar No. 42944
*(of counsel)*
Waterkeeper Alliance, Inc.
17 Battery Place, Suite 1329
New York, New York 10004

*Counsel for Waterkeeper Alliance, Inc. and Neuse Riverkeeper Foundation, Inc.*

 /s/  Stanley B. Green
Stanley B. Green, NC State Bar No. 25539
Strauch, Green & Mistretta, P.C.
530 North Trade Street, Suite 303
Winston-Salem, North Carolina 27101

*Counsel for all Plaintiffs*
*Local Civil Rule 83.1 Counsel*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an attorney at law and is admitted to practice in the Eastern District of North Carolina pursuant to the local rules, is attorney for plaintiffs, and is a person of such age and discretion as to be competent to serve process.

On the 20th day of June 2014, the undersigned served a copy of the foregoing Plaintiffs' Memorandum of Law in Support of Their First Motion to Compel Access to the Taylor Finishing Property via electronic filing through the Eastern District of North Carolina CM/ECF system, which will send notification of such filing to the following parties:

| | |
|---|---|
| Donalt J. Eglinton<br>Frank H. Sheffield<br>Amy P. Wang<br>Ward & Smith, P.A.<br>P.O. Box 867<br>New Bern, NC  28563<br><br>*Counsel for Defendants Donald Taylor and Annie Taylor, individually and d/b/a Taylor Finishing* | John W. King<br>Stubbs & Perdue, P.A.<br>P.O. Box 1654<br>New Bern, NC  28563<br><br>*Counsel for Defendants McLawhorn Livestock Farm, Inc., Aaron McLawhorn, and Justin McLawhorn*<br><br>Lars P. Simonsen<br>Simonsen Law Firm, P.A.<br>P.O. Box 848<br>Edenton, NC  27932<br><br>*Counsel for Defendants McLawhorn Livestock Farm, Inc., Aaron McLawhorn, and Justin McLawhorn*<br><br> /s/ Michael T. Leigh<br>Michael T. Leigh, NY State Bar No. 4873394<br>Debevoise & Plimpton LLP<br>919 Third Avenue<br>New York, NY  10022<br>(212) 909-6000<br>mtleigh@debevoise.com<br><br>*Counsel for Plaintiff North Carolina Environmental Justice Network* |