IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CV-154-D

| | | |
|---|---|---|
| NORTH CAROLINA ENVIRONMENTAL JUSTICE NETWORK, NEUSE RIVERKEEPER FOUNDATION, INC., and WATERKEEPER ALLIANCE, INC., | )<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | **ORDER** |
| DONALD TAYLOR and ANNIE TAYLOR, individually and d/b/a TAYLOR FINISHING, JUSTIN T. MCLAWHORN, and AARON MCLAWHORN, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

On July 27, 2012, plaintiffs sued defendants Donald Taylor and Annie Taylor, who own defendant Taylor Finishing, a swine farm. See Compl. [D.E. 1]; Second Am. Compl. [D.E. 65] ¶¶ 28–29, 31. Plaintiffs also sued Justin McLawhorn and Aaron McLawhorn, the prior owners of Taylor Finishing and the current owners of defendant McLawhorn Livestock Farm, Inc. Second Am. Compl. ¶ 30. Plaintiffs claim that defendants illegally dumped swine waste onto the lands and waters surrounding Taylor Finishing in violation of the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA"). Second Am. Compl. ¶¶ 59–84. Plaintiffs seek relief under the citizen-suit provisions in 33 U.S.C. § 1365 and 42 U.S.C. § 6972(a)(1)(A) and (B). Specifically, plaintiffs seek "a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witness' fees." Second Am. Compl. ¶¶ 3, 98–111. On August 12, 2014, defendants filed a motion to strike plaintiffs' demand for a jury trial [D.E. 104]. Plaintiffs responded in opposition [D.E. 108], and defendants replied [D.E. 109]. As explained below, the court denies the motion to strike.

I.

Congress created citizen-suit provisions to provide a supplemental means of enforcing federal law. Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60–61 (1987); Friends of the Earth v. Carey, 535 F.2d 165, 172 (2d Cir. 1976); Natural Res. Def. Council, Inc. v. Train, 510 F.2d 692, 699–700 (D.C. Cir. 1974). Citizen suits are appropriate when "federal, state, or local agencies fail to exercise their enforcement responsibility." Ark. Wildlife Fed'n v. ICI Ams., Inc., 29 F.3d 376, 380 (8th Cir. 1994). In the environmental context, Congress has "made clear that citizen groups are not to be treated as nuisances or troublemakers but rather as welcomed participants in the vindication of environmental interests." Friends of the Earth, 535 F.2d at 172. Both the CWA and the RCRA contain citizen-suit provisions. Under the CWA, "any citizen may commence a civil action . . . against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a). Similarly, under the RCRA, "any person may commence a civil action on his own behalf against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to [the RCRA]." 42 U.S.C. § 6972(a)(1)(A). A citizen also may file suit under the RCRA "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

The parties dispute whether, in a citizen suit under the CWA and the RCRA, a party is entitled to a jury determination on the issue of liability for civil penalties. Each side cites Tull v. United States, 481 U.S. 412 (1987), in support of its position.[1] In Tull, the Court held that the

---

[1] "[T]he relief available under [section] 6972 of the RCRA is virtually identical to that available under the CWA . . . ." Saline River Props., LLC v. Johnson Controls, Inc., No. 10-10507, 2010 WL 2605972, at *3 (E.D. Mich. June 25, 2010) (unpublished). Thus, the court's analysis

2

defendant-petitioner had a Seventh Amendment right "to a jury trial to determine liability on the legal claims." Id. at 425. Tull clarified that an action by the government for civil penalties is akin to those "traditionally available only in a court of law, [and] petitioner . . . [was] entitled to a jury trial on demand." Tull, 481 U.S. at 423; see also S.E.C. v. Kopsky, 537 F. Supp. 2d 1023, 1026 (E.D. Mo. 2008) ("[C]ivil penalties imposed as a fine rather than mere disgorgement are unquestionably legal remedies for which there is a Seventh Amendment right to a jury trial."). In Tull, however, the government brought the CWA claim pursuant to 33 U.S.C. § 1319(d), the enabling provision allowing the government to remedy statutory violations.

Defendants argue that Tull is limited to suits involving the government and does not extend to cases brought under "the citizen suit provisions of the CWA and the RCRA." Mem. Supp. Jury Strike [D.E. 105] 1–2. According to defendants, Tull's "determination that the government's CWA claim required a jury trial because actions in debt historically were tried before a jury does not apply to the statutorily-created and limited citizen suits, in which the citizens recover no 'debt' and Congress afforded them no right to a jury trial." Defs.' Reply [D.E. 109] 3. In support, defendants rely primarily on Sanchez v. Esso Standard Oil De Puerto Rico, Inc., No. 08-2151(JAF), 2010 WL 3087485 (D.P.R. Aug. 5, 2010) (unpublished), a case brought under the RCRA's citizen-suit provision. In Sanchez, the court held that, unlike in RCRA's direct enforcement provision, "the provisions for injunctive relief and civil penalties [in the citizen-suit provision] are intertwined." Id. at *2. The court reasoned that the request for civil penalties was "inextricably entangled" with the request for injunctive relief because, under the citizen-suit provision, "the proof required for civil penalties for violations would necessarily implicate the grounds for injunctive relief." Id. Thus, in Sanchez, the court held that "[p]laintiff's suit is equitable in nature, thereby precluding [the] demand for a jury." Id.

---

applies equally to the jury demands and requests for civil penalties under both the CWA and RCRA. See Second Am. Compl. ¶¶ 107–08.

3

Defendants also cite Gwaltney to bolster their argument that plaintiffs' claims are solely equitable. In Gwaltney, the Court analyzed whether a plaintiff seeking both civil penalties and injunctive relief in a citizen suit could obtain relief for wholly past violations. 484 U.S. at 52. The Court compared the CWA's direct enforcement provision with the citizen-suit provision and stated that section 1365(a) of the CWA "does not authorize civil penalties separately from injunctive relief . . . [C]itizens, unlike the Administrator, may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing violation." Id. at 58–59 (emphasis added). The Court recognized that the government's direct enforcement ability "constitutes a separate grant of enforcement authority." Id. at 58.

Defendants argue that this "separate grant of enforcement authority" alters entitlement to a jury. According to defendants, Gwaltney clarifies that requests for civil penalties in citizen suits are inextricably intertwined with claims for injunctive relief. See id. ("The citizen suit provision suggests a connection between injunctive relief and civil penalties that is noticeably absent from the provision authorizing agency enforcement."). Defendants claim this "connection" sufficiently distinguishes citizen suits from government enforcement actions to preclude the right to a jury determination of liability for legal claims.

Defendants overstate Gwaltney's impact. Although the Court in Gwaltney recognized a marked distinction between the government's ability to pursue statutory civil penalties and a private citizen's, the Court merely held that the government could pursue wholly past violations while citizen suits were limited to cases of ongoing violations. See id. at 58–61. Thus, under Gwaltney, citizen suits cannot be brought solely to recover civil penalties and therefore must be joined to equitable claims seeking to abate an ongoing violation. Id. at 58–59. However, Gwaltney did not address how the jurisdictional "connection" between civil penalties and injunctive relief in citizen suits affects either party's entitlement to a jury determination on the legal claims.

4

Here, in resolving whether a party is entitled to a jury determination on the issue of liability for civil penalties, the court relies on principles that the Court discussed in Tull. Tull established that "[a] civil penalty was a type of remedy at common law that could only be enforced in courts of law." Tull, 481 U.S. at 422. The Tull Court then found that "because the nature of the relief authorized by [section] 1319(d) was traditionally available only in a court of law, petitioner in [Tull] is entitled to a jury trial on demand." Id. at 423. Although plaintiffs here seek civil penalties under section 1319(d) by way of section 1365, they seek the same relief as in a direct enforcement suit. Accordingly, Tull's section 1319(d) analysis applies, and plaintiffs are entitled to a jury determination of liability for civil penalties.

In opposition to this conclusion, defendants argue that when claims for civil penalties are intertwined with equitable claims they become "equitable in nature and thus not entitled to be tried before a jury." Defs.' Reply 1. In Tull, however, the Court held that "if a 'legal claim is joined with an equitable claim, the right to a jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought.'" Tull, 481 U.S. at 425 (quoting Curtis v. Loether, 415 U.S. 189, 196 n.11 (1974)); see Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 508–11 (1959). Tull also clarified that civil penalties are legal claims and that a court in equity "may not enforce civil penalties." Tull, 481 U.S. at 424. Accordingly, even if under Gwaltney legal claims for civil penalties must be joined with equitable claims in citizen suits, parties are still entitled to a jury determination of their legal claims. To the extent that other district courts reached a different conclusion, this court respectfully disagrees with their analysis of Tull and the Seventh Amendment. See Sanchez, 2010 WL 3087485, at *2.

One final point. In Tull, defendants wanted a jury trial and plaintiffs did not. Here, plaintiffs want a jury trial and defendants do not. If this court accepted defendants' position that the right to a jury under the CWA and RCRA depended on the identity of the plaintiff, a future defendant's right

5

to a jury trial would hinge not on the nature of the relief sought but on whether the government brought the case seeking civil penalties or whether a private citizen brought the case seeking civil penalties. The right to a jury trial, however, belongs to each party. See U.S. Const. amend. VII; Fed. R. Civ. P. 38. In light of the relief sought in a citizen suit, it makes no sense to read defendants' proposed distinction into the CWA or RCRA. See Tull, 481 U.S. at 421 (stating that the "the relief sought is '[m]ore important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial"). Because the relief sought is the same in both a citizen suit and a direct enforcement suit, either party has the right to demand and receive a jury determination of liability for civil penalties.

II.

In sum, the court DENIES defendants' motion to strike plaintiffs' jury demand on the issue of liability for civil penalties [D.E. 104].

SO ORDERED. This **19** day of December 2014.

JAMES C. DEVER III
Chief United States District Judge

6

Case 4:12-cv-00154-D   Document 147   Filed 12/29/14   Page 6 of 6