IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:12-CV-154-D

NORTH CAROLINA ENVIRONMENTAL   )
JUSTICE NETWORK; NEUSE   )
RIVERKEEPER FOUNDATION, INC.; and   )
WATERKEEPER ALLIANCE, INC.,   )
  )
    Plaintiffs,   )    **ORDER and**
  )   **MEORANDUM AND**
     v.   )    **RECOMMENDATION**
  )
DONALD TAYLOR and ANNIE TAYLOR,   )
individually and d/b/a TAYLOR   )
FINISHING; MCLAWHORN LIVESTOCK   )
FARM, INC.; JUSTIN T. MCLAWHORN;   )
and AARON MCLAWHORN,   )
  )
    Defendants.   )
  )

    This case comes before the court on two motions by plaintiffs Waterkeeper Alliance, Inc. and Neuse Riverkeeper Foundation, Inc. ("plaintiffs"): (1) a motion (D.E. 93) to compel inspection and to extend time[1] ("motion to compel"); and (2) a motion (D.E. 139) for relief pursuant to Fed. R. Civ. P. 56(d) or, alternatively, for extension of the time to respond to defendants' motions for summary judgment pursuant to Rule 6(b) ("Rule 56(d) motion"). Also before the court is a motion (D.E. 143) by defendants Donald Taylor ("Mr. Taylor") and Annie Taylor, individually and d/b/a Taylor Finishing (collectively "Taylor defendants"), and McLawhorn Livestock Farm, Inc., Justin T. McLawhorn, and Aaron McLawhorn (collectively "McLawhorn defendants") (all defendants collectively "defendants"). Defendants' motion seeks to strike the declaration of a purported expert (D.E. 139-1) submitted by plaintiffs in support of their Rule 56(d) motion. All three motions were referred to the undersigned. For the reasons

---

[1] Now-dismissed plaintiff North Carolina Environmental Justice Network was also a party to this motion.

stated below, plaintiffs' motion to compel will be allowed in part and denied in part; defendants' motion to strike will be denied as moot; and it will be recommended that plaintiffs' Rule 56(d) motion be denied, but that comparable relief be provided under Rule 16.

## BACKGROUND

### I.      PLAINTIFFS' CLAIMS

Plaintiffs, along with the North Carolina Environmental Justice Network ("Network"), commenced this federal citizens environmental action on 27 July 2012. (*See* Compl. (D.E. 1)). With leave of court, they filed their second amended complaint (D.E. 65)—the most current version—on 25 April 2013. The claims against the Network were dismissed with prejudice by stipulation on 21 October 2014 (D.E. 110).

The property which is the subject of the second amended complaint ("Taylor Facility") is a hog-processing farm in Jones County presently owned by the Taylor defendants and previously owned by the McLawhorn defendants. (2d Am. Compl. ¶¶ 28-31). Plaintiffs allege that defendants' illegal management, discharge, and disposal of swine waste has resulted in the release of pollutants onto the land and waters in the Neuse River Basin area of the coastal plain of North Carolina. (*Id.*, *e.g.*, ¶ 1). Plaintiffs assert claims for violations of: (1) section 505 of the Clean Water Act, 33 U.S.C. § 1365, by continuing to discharge pollutants without a permit (2d Am. Compl. ¶¶ 58-70); (2) section 7002(a)(1)(A) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), by allowing open dumping (2d Am. Compl. ¶¶ 71-84); and (3) section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), by posing an imminent and substantial endangerment to health or the environment (2d Am. Compl. ¶¶ 85-97). As relief, plaintiffs seek a declaratory judgment, injunctive relief, civil penalties, costs, and other relief.

(*Id.* ¶¶ 98-111).  Defendants deny the material allegations in plaintiffs' second amended complaint.  (*See generally* Ans. to 2d Am. Compl. (D.E. 68, 75)).

## II.    RELEVANT CASE HISTORY

The court entered a Scheduling Order (D.E. 81) on 19 November 2013, adopting the parties' Discovery Plan (D.E. 78) with minor modifications of certain proposed deadlines.  The Scheduling Order provided for:  the commencement of discovery on 29 October 2013 (Sch. Ord. 1; Disc. Plan ¶¶ 3, 4.d); completion of fact discovery by 1 June 2014 (Sch. Ord. 1; Disc. Plan ¶ 4.i); disclosure of expert reports by 8 August 2014 (Sch. Ord. ¶ 1); completion of all discovery by 3 October 2014 (*id.* ¶ 2); and filing of potentially dispositive motions by 7 November 2014 (*id.* ¶ 3).  Plaintiffs served on the Taylor defendants a request for inspection of the Taylor Facility on 22 January 2014 (D.E. 95 at 5-13).  By agreement of plaintiffs, the Taylor defendants did not serve their response (D.E. 95 at 15-32) to the inspection request until 16 April 2014, broadly objecting to it.  Over the ensuing two months, plaintiffs attempted to resolve their disputes with the Taylor defendants regarding the inspection request.  Some, but not all, differences were resolved.  On 20 June 2014, plaintiffs filed the instant motion to compel.  Prior to the filing, the Taylor defendants agreed to extension of the fact discovery deadline to 1 July 2014.  (*See* 13 June 2014 Email from Taylor Defs.' Counsel (D.E. 95 at 74)).

In their motion, plaintiffs sought access to the Taylor Facility for a total of about six and a half months between 15 August 2014 and 1 July 2015 to take photographs, obtain samples, and perform other inspection activities.  (*See* Pls.' Proposed Compel Ord. (D.E. 93-1) ¶¶ 1, 3-8).  Plaintiffs' motion also sought extension of, among other deadlines, those for expert reports and the completion of discovery to 7 August 2015 and 2 October 2015, respectively.  (*Id.* ¶ 2).

3

Plaintiffs did not produce any expert reports by the 8 August 2014 deadline established in the Scheduling Order or thereafter. However, on 3 November 2014, they emailed to defendants' counsel supplemental initial disclosures identifying at least five expert witnesses. (*See* Defs.' Strike Mot. Mem. (D.E. 144) 5; 3 Nov. 2014 Email from Pls.' Counsel (D.E. 144-1 at 2)).[2]

On 23 October 2014, on defendants' motion, the court extended the deadline for defendants' potentially dispositive motions to 21 November 2014.[3] (*See* D.E. 114). On 21 November 2014, defendants filed three separate motions for summary judgment. (*See* D.E. 125-137). Plaintiffs filed their motion for relief under Rule 56(d) on 5 December 2014.

In support of their Rule 56(d) motion, plaintiffs filed a declaration of Michael D. Smolen, Ph.D. (D.E. 139-1), a purported expert in the environmental matters at issue. On 10 December 2014, defendants filed their motion to strike the Smolen Declaration.

The court held a telephone conference with counsel on the motions on 11 December 2014. After the telephone conference, the court entered an order (D.E. 146) staying the deadline for plaintiffs to respond to defendants' summary judgment motions pending further order of the court.

## PLAINTIFFS' MOTION TO COMPEL (D.E. 93)
### (Allowed in Part and Denied in Part)

I.    **INSPECTION**

A.    **Applicable Legal Standards**

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including requests to permit entry on land to "inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R.

---

[2] The supplemental initial disclosures do not appear to have been filed with the court.

[3] Plaintiffs seek reconsideration of the extension order. (*See* D.E. 119).

Civ. P. 34(a)(2); *see generally* Fed. R. Civ. P. 26-37.  Rule 26(b) provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

At the same time, Rule 26(c) authorizes the court "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  The Fourth Circuit has held that, pursuant to this provision, "the degree to which [a] proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978); *see also Clay v. Consol Penn. Coal Co., LLC*, 5:12-cv-92, 2013 WL 3819922, at *4 (N.D.W. Va. 12 June 2013) ("Any dangers must be balanced against the relevance and need for the inspection."); *Johnson v. Mundy Indus. Contractors, Inc.*, 7:01CV99–BO3, 2002 WL 31464984, at *2 (E.D.N.C. 15 Mar. 2002) ("[A]n inquiry into when to compel an inspection goes beyond mere 'relevance' and must balance the need presented by the moving party against the 'burdens and dangers created by the inspection.'" (quoting *Belcher*, 588 F.2d at 908)).  The need for such balancing is rooted in the reality that "entry upon a party's premises may entail greater burdens and risks than mere production of documents," as to which the general relevance standard of Rule 26(b) routinely controls. *Belcher*, 588 F.2d at 908.  Thus, the court must exercise "precision and care in the formulation of inspection orders." *Id.* at 911. It has been held that the burden rests on the objecting party to convince the court that the

inspection requested is unnecessary.  *See Arkansas Game & Fish Comm'n v. United States*, 74

Fed. Cl. 426, 432 (16 Nov. 2006) (citing 8A *Fed. Prac. & Proced. Civ.* § 2214).

B.    **Analysis**

1.    Groundwater Sampling.    As set out in their proposed order, plaintiffs seek to

install nine sampling wells on the Taylor Facility at locations originally identified in their request

for inspection and to take groundwater samples from the wells on a biweekly basis.  (Pls.'

Proposed Compel Ord. ¶ 5 & Ex. A).  The proposed period for sampling was 15 August to 1

November 2014 and 1 March to 1 July 2015, meaning sampling would occur over six and a half

months during a period spanning ten and a half months.  (*Id.* ¶ 1).  The gap between 1 November

2014 and 1 March 2015 apparently reflects a period during which swine waste effluent is not

being sprayed on fields and groundwater sampling would not be as meaningful as it otherwise

might be.    In their inspection request, plaintiffs had sought a sampling period of similar

duration—six months, running from 17 February to 8 August 2014—but with sampling

occurring on a weekly basis.  (Insp. Req. 1-2, 3 ¶ 8).  In negotiations with the Taylor defendants,

plaintiffs proposed a sampling period of four and a half months—15 June to 1 November 2014—

also with weekly sampling.  (30 May 2014 Ltr. from Pls.' Counsel (D.E. 95 at 47-50) 2).[4]

The Taylor defendants oppose any groundwater sampling.  In a declaration by Mr. Taylor

supporting the Taylor defendants' response to plaintiffs' motion to compel, he details the

burdens and risks that would be imposed upon the Taylor Facility by installation of the requested

groundwater wells and the weekly sampling sought in the inspection request.  (2d Taylor Dec.

(D.E. 99)).  According to the declaration, the Taylor Facility is operated by three people—Mr.

---

[4] Plaintiffs submitted this letter and other correspondence among counsel from their negotiations over plaintiffs'
inspection request in support of the motion to compel.  (*See* D.E. 95 at 34-75).  The Taylor defendants did not object
to submission of this evidence and themselves discuss the negotiations in their memorandum opposing the motion.
Both sides have therefore waived any objection they might otherwise have had to evidence of their negotiations.

Taylor, his son, and a laborer. (*Id.* ¶ 10). Mr. Taylor would have to monitor installation and sampling, thereby tying up for significant periods one-third of the labor force needed to operate the facility; installation would increase the risk of exposure of the 9,000 animals at the facility to the PED virus, which can kill entire herds, and likely agitate and disturb the animals; installation as well as operation and removal of the wells in the vicinity of three swine waste lagoons creates a risk of damaging the lagoons, which are presently in a condition satisfactory to the North Carolina regulatory agencies and the United States Environmental Protection Agency; and installation would impede operation of equipment needed to maintain the lagoons. (*Id.* ¶ 15).[5]

Plaintiffs offered no expert or scientific evidence responsive to the concerns raised in the Taylor Declaration. They do cite, in a footnote, to naked allegations in their second amended complaint regarding surface water sampling from areas adjacent to the Taylor Facility, photographs of the Taylor Facility, and two violation notices from state water quality officials. (Pls.' Compel Mot. Mem. (D.E. 94) 6 n.3); 2d Am. Compl. ¶¶ 53-58). Many of the sampling results and the two violation notices predate the Taylor defendants' taking ownership of the Taylor Facility on 23 November 2010. (*See* 2d Am. Compl. ¶ 31; Taylor Defs.' Ans. to 2d Am. Compl. ¶¶ 53-58).

Plaintiffs also submitted a letter from their counsel to the Taylor defendants' counsel transmitting various sampling results and photographs culled from discovery to support their inspection request. (3 June 2014 Ltr. from Pls.' Counsel (D.E. 95 at 56-71)). As with the

---

[5] The Taylor defendants also challenged the groundwater sampling plaintiffs requested on legal grounds—that is, that groundwater contamination is not within the scope of plaintiffs' claims. The court need not resolve this issue given the impermissibility of the groundwater sampling for the reasons stated.

allegations from the second amended complaint, there is no explanation of this evidence, including where the sampling occurred and how it supports plaintiffs' inspection request.[6]

The cases plaintiffs cite as precedent for the groundwater and other sampling they seek is readily distinguishable. None is binding precedent.[7]

Based on the record before it, the court finds that the Taylor defendants have demonstrated that the installation, operation, and removal of the groundwater wells, even if sampling is done on a biweekly basis, presents burdens and risks that outweigh the potential benefits to be obtained from such sampling. Plaintiffs' request to install and operate groundwater wells on the Taylor Facility will accordingly be denied.

2. <u>Surface Water Sampling</u>. Plaintiffs seek to take surface water samples at 15 locations originally identified in their inspection request as well as from additional surface water conveyances they identify upon inspection, on a biweekly basis, as opposed to a weekly basis as sought in their inspection request. (Pls.' Proposed Compel Ord. ¶ 6 & Ex. B). The length of the requested period of sampling—six and a half months—is the same as proposed for groundwater sampling in both the proposed order and inspection request, which, as indicated, plaintiffs agreed to reduce to four and a half months in negotiations. (*Id.* ¶ 1; Insp. Req. 1-2, 3-4 ¶ 9; 30 May 2014 Ltr. from Pls.' Counsel (D.E. 95 at 47-50) 2).

---

[6] According to the Smolen Declaration, plaintiffs had retained Dr. Smolen by the time they served their inspection request in January 2014. (Smolen Decl. ¶¶ 7, 8). It therefore appears that plaintiffs could readily have presented expert evidence in support of their motion to compel, but chose not to do so. The Smolen Declaration, filed 5 December 2014, is not properly considered in evaluation of plaintiffs' motion to compel because, among other reasons, it was filed months after any supporting materials for that motion, filed in June 2014, were due. Notably, plaintiffs cite to at least one case in support of their motion to compel in which the moving party did support its inspection request with expert evidence. *See United States v. Acquest Wehrle, LLC,* No. 09-CV-637C(F), 2010 WL 1708528, at *1 (W.D.N.Y. 27 Apr. 2010).

[7] Notwithstanding plaintiffs' characterization of the groundwater and other inspection activities they seek as routine, one of the cases it cites describes the request for soil sampling there as "perhaps extraordinary." *Versatile Metals, Inc. v. Union Corp.*, Civ. A. No. 85-4085, 1986 WL 8720, at *3 (E.D. Pa. 8 Aug. 1986).

The Taylor defendants appear to agree to surface water sampling on two occasions, although the number of locations remains in dispute. (*See* 3 June 2014 Ltr. from Taylor Defs.' Counsel (D.E. 95 at 52-54) 2). It is apparent from the Taylor Declaration that provision of access on even a biweekly basis as proposed by plaintiffs in their motion would place a substantial burden on the Taylor defendants.

The court concludes that sampling on four occasions over a period of three months would strike an appropriate balance between plaintiffs' need for the sampling and the burden such sampling places on the Taylor defendants. This period also accounts for plaintiffs' delay and the other considerations discussed below in connection with their request for extension of time. Assuming, as the record suggests, that sampling could begin by March, the three months allowed for it equates to extension of the fact discovery deadline and thereby the deadline for completion of this sampling to 31 May 2015. The sampling needs to be done on dates reasonably agreed to by the Taylor defendants[8] to properly address the burden the sampling will place on them. To avoid undue burden to the Taylor defendants, the number of locations at which sampling may occur shall be limited to 15, comprised of locations identified in Exhibit B to plaintiffs' proposed order (D.E. 93-1 at 5) and/or other locations reasonably agreed to by the Taylor defendants.

3. <u>Soil Sampling</u>. Plaintiffs seek to take soil samples on three fields on two separate dates selected by them. (Pls.' Proposed Compel Ord. ¶ 4). On each field, three cores would be drilled to a depth of 24 inches and 20 cores would be drilled to a depth of 6 inches. (*Id.*). In their inspection request, plaintiffs sought soil sampling on dates agreed to by the parties (Insp. Req. ¶ 11), but otherwise the terms of that request are the same as those proposed by plaintiffs in their motion.

---

[8] "Reasonably agreed to" signifies that agreement may not be unreasonably withheld.

In their response to the motion, the Taylor defendants agreed to eight six-inch soil samples on two occasions. (*See* Taylor Defs.' Compel Mot. Mem. (D.E. 97) 3). Four samples would be from locations identified in the inspection request and four from mutually acceptable locations. (*Id.*).

In accordance with plaintiffs' and the Taylor defendants' apparent agreement, the court will permit soil sampling on two occasions during the extended discovery period. The soil sampling shall occur on dates reasonably agreed to by the Taylor defendants on which plaintiffs are conducting surface water sampling.

An article from the North Carolina Department of Agriculture & Consumer Services entitled, "Soil sampling basics," submitted by plaintiffs, states that for agricultural samples 15 to 20 cores should be taken from each area. ("Soil sampling basics" (D.E. 95 at 77-78) 1 (N.C. Dep't of Agric. & Consumer Servs. Sept. 2013)). In contrast, as noted, plaintiffs seek to take 23 cores per field. The court will limit plaintiffs to 15 cores per field on the grounds that plaintiffs' own evidence indicates this number is sufficient and the taking of additional cores would require additional time, placing an unjustified burden on the Taylor defendants' labor force. Although the article specifies for agricultural land a maximum depth of six to eight inches ("Soil sampling basics" 2), it is not apparent that samples of 24 inches would require more time or otherwise impose an unnecessary burden on the Taylor defendants. Accordingly, up to 3 of the core samples from each field may be 24 inches in depth.

The Taylor defendants have not shown that sampling at any particular location would impose a greater burden on them than any other location. Plaintiffs will therefore be permitted to select the locations in the three fields from which the soil samples are to be taken.

10

4.    <u>Inspection, Measurement, and Photography</u>.  In their proposed order, plaintiffs seek to inspect, measure, and photograph the Taylor Facility, the draining infrastructure, waste management structures, and wastewater as follows:  (i) the Taylor Facility, including buildings, outdoor storage areas, equipment, waste land application areas, the perimeter of the property, the property line, and all fences; (ii) draining infrastructure, including, but not limited to, perennial streams, intermittent steams, catch basins, pipes, gutters, tile drains, ditches, swales and/or other water conveyances on or leading from the Taylor Facility; (iii) waste management structures, including waste lagoons; and (iv) wastewater in lagoons, sprayed and/or ponding on the property, and in open conveyances.  (Pls.' Proposed Compel Ord. ¶ 3).  These proposed inspection activities are somewhat less expansive than those sought in the inspection request. (*See* Ins. Req. ¶ 2).  While the Taylor defendants objected to these activities in their response to plaintiffs' inspection request, they did not address them specifically in their memorandum in response to plaintiffs' motion to compel, and appeared to have agreed to them in negotiations. (*See*, *e.g.*, 23 May 2014 Ltr. from Taylor Defs.' Counsel (D.E. 95 at 39-45) 6; 18 June 2014 Email from Pls.' Counsel (D.E. 95 at 73)).

The court finds that these inspection activities are relevant and would not impose an undue burden on the Taylor defendants, provided that they are conducted on one or more dates reasonably agreed to by the Taylor defendants on which plaintiffs are performing surface water sampling.  The court will therefore allow the inspection, measurement, and photographic activities on these terms.

5.    <u>Lagoon Sampling</u>.  Plaintiffs and the Taylor defendants appear to have agreed and the court will order that plaintiffs may take samples from each of the Taylor Facility's three lagoons on two separate occasions.  (*See* Pls.' Proposed Compel Ord. ¶ 7; Taylor Defs.' Compel

Mot. Mem. 3).  The sampling shall be on dates reasonably agreed to by the Taylor defendants on which plaintiffs are performing surface water sampling to adequately address the burdens the sampling imposes on the Taylor defendants.  The samples may be of surface and bottom lagoon waste, as sought by plaintiffs.  (Pls.' Proposed Compel Ord. ¶ 7).

6.    <u>Sampling of Central Pivot Sprayer</u>.  The parties appear to agree and the court will order that plaintiffs may on one occasion sample swine waste effluent from the central pivot sprayer as it is being applied to sprayfields.  (*See*, *e.g.*, Pls.' Proposed Compel Ord. ¶ 8; 3 June 2014 Ltr. from Taylor Defs.' Counsel 3).  This sampling shall occur on a date reasonably agreed to by the Taylor defendants on which plaintiffs are performing surface water sampling.

7.    <u>Biosecurity and Other Conditions on Inspection Activities</u>.  Plaintiffs represent in their proposed order that the parties have reached agreement on biosecurity and other conditions on plaintiffs' inspection activities.  (Pls.' Proposed Compel Ord. ¶¶ 9-13).  The Taylor defendants do not contest that representation in their response memorandum.  The court will accordingly require that these conditions apply.  These conditions are as follows, except as otherwise provided herein:

a.  Plaintiffs shall identify by name and position the specific contingent of people who will be going on the Taylor Facility in order to conduct any inspection activities, and no person about whom the Taylor defendants state a reasoned objection shall be permitted to enter the property;

b.  Each water and soil sample taken by plaintiffs from the Taylor Facility during the Sampling Period shall be divided into two portions, one of which may be tested by plaintiffs and the other of which will be provided to the Taylor defendants, both of which to be labeled

with the date, time, and location where the sample of was taken and the identity of the individual taking the sample.

       c.   Plaintiffs shall enter an agreement with the Taylor defendants pursuant to which plaintiffs agree to indemnify and hold harmless the Taylor defendants from all loss incurred by the plaintiffs as a result of any action taken in connection with the Plaintiffs' entry on the Taylor Facility and the inspection activities.

       d.   Plaintiffs and all people in plaintiffs' contingent will follow and adhere to appropriate farm biosecurity and exclusion measures and guidelines recommended by the North Carolina Department of Agriculture & Consumer Services, Veterinary Division when at the Taylor Facility.

       IT IS THEREFORE ORDERED that the portion of plaintiffs' motion to compel (D.E. 93) seeking an order compelling inspection of the Taylor Facility is ALLOWED IN PART and DENIED IN PART on the foregoing terms. The parties may agree to modifications in the terms of the various inspection activities authorized herein, provided that any such modifications shall be subject to and shall not extend the deadline for completion of fact discovery. The parties shall confer expeditiously in good faith in an effort to resolve without court intervention any disputes that arise regarding performance of the inspection activities provided for herein.

## II.    EXTENSION OF TIME

### A.    Applicable Legal Standards

      With exceptions not relevant here, Rule 16 requires that a district court enter a scheduling order setting deadlines for completion of discovery and addressing other scheduling matters. Fed. R. Civ. P. 16(b)(1), (3). "A schedule may be modified only for good cause . . . ." Fed. R. Civ. P. 16(b)(4). The good cause modification provision specific to Rule 16(b)(4) takes

precedence over the generally applicable extension provisions of Rule 6(b)(1). *E.g., Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997); *Corkrey v. Internal Revenue Serv.*, 192 F.R.D. 66, 67 (N.D.N.Y. 2000). The good cause provision of Rule 16(b)(4) does not focus on the prejudice to the non-movant or bad faith of the moving party, but rather on the moving party's diligence. *Dilmar Oil Co.*, 986 F. Supp. at 980; *see also Cook v. Howard*, 484 Fed. Appx. 805, 815 (4th Cir. 2012) ("'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'") (quoting 6A Charles Alan Wright, *et al.*, *Fed. Prac. & Proc. Civ.* § 1522.2 (2010)); *McDonald v. Marlboro County*, 5:12CV1725-RBH-KDW, 2013 WL 6580631, at *4 (D.S.C. 16 Dec. 2013) ("[T]he key to the 'good cause' analysis of Rule 16 is whether the party was diligent in seeking to amend."); Fed. R. Civ. P. 16(b), advisory committee's note—1983 amendment ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). The party moving to modify a scheduling order bears the burden of demonstrating the existence of good cause. *United States v. Cochran*, No. 4:12–CV–220–FL, 2014 WL 347426, at *2 (E.D.N.C. 30 Jan. 2014) (citing *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)). "[T]he scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (quoting *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).

## B.     Analysis

Plaintiffs' pursuit of the inspection activities at the Taylor Facility has been characterized by delay.  Among the delay is their service of the request for inspection in January 2014, some three months after commencement of discovery in October 2013, representing almost half of the approximately seven-month fact discovery period and one-quarter of the approximately eleven-month overall discovery period to which plaintiffs agreed in the Discovery Plan.  They then consented to extension of the Taylor defendants' response to the request for inspection by another two months, until mid-April 2014, a month and a half before the close of fact discovery and the approximate midpoint of the overall discovery period.  While plaintiffs complain that the length of the extension the Taylor defendants sought was unreasonable (it equaled and was in reciprocation for the extension defendants allowed plaintiffs on their responses to plaintiffs' discovery), the extension was effected only because plaintiffs agreed to it.

Plaintiffs then negotiated over their differences with the Taylor defendants regarding the inspection request for an additional two months before bringing their motion to compel in mid-June 2014.  Plaintiffs thus filed their motion less than two weeks before expiration of the stipulated extended 1 July 2014 deadline for fact discovery (and after the 1 June 2014 deadline for fact discovery to which they had agreed in the Discovery Plan and which the court had adopted).  The motion came with less than four months left in the overall discovery period.

While both the Federal Civil Rules and Local Civil Rules require parties to attempt to resolve disputes among themselves without court intervention, they act at their peril if they negotiate for such a period that they jeopardize their ability to comply with case deadlines.  Such negotiations obviously do not suspend case deadlines.

15

Nor can it be said that the motion to compel suspended the stipulated fact discovery deadline of 1 July 2014 or any subsequent deadlines established by the Scheduling Order. *See*, *e.g.*, *Fitchett v. Wilson*, 2013 WL 5468389, at *1 n.4 (D.S.C. 30 Sept. 2013), *aff'd*, 561 Fed. Appx. 256 (4th Cir. 19 Mar. 2014).[9] The Discovery Plan itself, as adopted by the court, provides that "[i]nterim deadlines for discovery shall be as follows, *unless otherwise agreed to by the parties or ordered by the court*." (Disc. Plan ¶ 4.i) (emphasis added). Thus, by agreement of plaintiffs, only a stipulation or order could modify the case deadlines, not a mere motion.[10]

As indicated, in the course of the parties' negotiations, the Taylor defendants agreed to a range of inspection activities plaintiffs sought. (*See*, *e.g.*, 23 May 2014 Ltr. from Taylor Defs.' Counsel 5-6). Plaintiffs, though, chose not to take advantage of the access that the Taylor defendants offered them, opting instead to seek broader access through litigation.

Given the timing of their motion, plaintiffs proposed an inspection period (including a four-month hiatus from November 2014 through February 2015) of about ten and half months, 50 percent longer than the original fact discovery period. Only a fraction of the proposed inspection activities sought could be conducted during the ten days remaining in the extended fact discovery period after the motion was filed. As to the overall discovery deadline, plaintiffs proposed to extend it a full year, to 2 October 2015.

---

[9] The *Fitchett* court stated:

> Plaintiffs' assumption that the Court would grant their motion for a continuance (really, a motion to hold Defendants' motion in abeyance and to stay the deadline to respond pending further discovery) on the day the response was due was imprudent, and Plaintiffs must bear the consequences of not complying with a deadline absent a court-ordered extension. Indeed, the question of whether to extend procedural deadlines is one for the Court—not Plaintiffs.

*Fitchett*, 2013 WL 5468389, at *1 n.4.

[10] Notably, plaintiffs did not ask the that the deadlines they sought to extend be suspended pending ruling on their motion to compel, as they did with respect to their deadline for responding to defendants' summary judgment motions pending ruling on their motion to compel. (*See* Pls.' Rule 56(d) Mot. ¶ 12).

16

Plaintiffs' delay, as serious as it was, does not dictate complete denial of their request for extension of time. They did file their motion before the stipulated, extended deadline for fact discovery and they did try to resolve the disputes over their request for inspection without court intervention. In addition, to deprive plaintiffs of any additional time to conduct inspection activities would appear to impair their ability to prosecute their claims. Federal policy, of course, favors resolution of cases on the merits. *See*, *e.g.*, *Choice Hotels Intern., Inc. v. Goodwin and Boone*, 11 F.3d 469, 471-72 (4th Cir. 1993); *Rudisill v. United States*, No. 5:13–CV–110–F, 2014 WL 2014 WL 1117976, at *2 (E.D.N.C. 20 Mar. 2014) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). Further, the permitted inspection activities themselves would not impose any greater burden on the Taylor defendants during an extension of the fact discovery period than they would have during the prior period for fact discovery. To the extent that defendants would need to re-depose any persons as a result of the inspection activities allowed, the prejudice can be ameliorated by requiring plaintiffs to bear any additional court reporter and videographer fees defendants incur.

The court has already found that extension of the fact discovery deadline to 31 May 2015 will adequately accommodate the permissible inspection activities by plaintiffs. Extension to this date will also adequately address plaintiffs' lack of diligence with respect to inspection activities and the inherent prejudice to defendants and burden on the court arising from further delay in resolution of this case. The post-fact discovery deadlines are appropriately extended using as a guide the same intervals between deadlines as under the Scheduling Order.

IT IS THEREFORE ORDERED that the portion of plaintiffs' motion to compel (D.E. 93) seeking extension of the case schedule be ALLOWED IN PART and DENIED IN PART on the following terms:

1.     Any additional fact discovery, including the inspection activities provided for herein, shall be commenced in time to be completed by 31 May 2015.

2.     Reports from retained experts are due by 1 July 2015, and from rebuttal experts by 3 August 2015.

3.     All discovery shall be completed by 2 September 2015.

4.     Any further potentially dispositive motions shall be filed by 2 October 2015.

5.     Except as modified herein, the Scheduling Order, as previously amended, remains in full force and effect.

6.     Plaintiffs shall bear the court reporter and videographer costs reasonably incurred by defendants for any depositions of persons whom defendants previously deposed that are prompted by inspection activities provided for herein.

## DEFENDANTS' MOTION TO STRIKE (D.E. 139)
### (Denied as Moot)

Rule 37(c)(1) addresses tardy disclosure of expert witnesses:

> If a party fails to provide information or identify a witness as required by Rule 26 . . . (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions . . . .

Fed. R. Civ. P. 37(c)(1).  Defendants seek to strike the Smolen Declaration on the grounds that it contains expert opinion; plaintiffs failed to disclose Smolen by the 8 August 2014 expert report deadline; and Rule 37(c)(1) prohibits plaintiffs from using the Smollen Declaration in support of its Rule 56(d) motion.

18

As discussed below, allowance of the inspection activities provided for herein dictates that further proceedings on summary judgment be deferred until after such activities are conducted, irrespective of the Smolen Declaration. IT IS THEFORE ORDERED that defendants' motion to strike (D.E. 139) is DENIED AS MOOT.

## PLAINTIFFS' RULE 56(d) MOTION (D.E. 143)
### (Recommended for Denial, but with Provision of Comparable Relief)

Rule 56(d) provides that where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

In their Rule 56(d) motion, plaintiffs request, pursuant to that provision, the entry of an order denying without prejudice or deferring resolution of defendants' motions for summary judgment. Alternatively, plaintiffs seek an order under Rule 6(b) extending the time to respond to the summary judgment motions.

Basic fairness dictates that plaintiffs not be required to respond to defendants' motions for summary judgment until after the additional discovery provided for herein is completed. Indeed, such additional discovery could be feckless if plaintiffs were not able to exploit it in defending against summary judgment motions by defendants.

While plaintiffs base their motion on statements in the Smolen Declaration that the inspection activities sought in the inspection request are vital to their case, that is not the basis for the court's determination. Rather, as indicated, it is the court's partial allowance of plaintiffs' motion to compel that mandates deferral of summary judgment proceedings. Thus, such deferral is not pursuant to Rule 56(d) or Rule 6(b), but rather Rule 16(b)(4), as part of modification of the schedule for proceedings in this case.

19

The deferral of summary judgment proceedings pending completion of the additional discovery is most efficiently effected by denying without prejudice the pending motions for summary judgment. In addition to preserving plaintiffs' opportunity to utilize the additional discovery in summary judgment proceedings, such denial would enable defendants to tailor any further summary judgment motions they may assert to information developed through the additional discovery, rather than attempting to address it by supplementation of their current summary judgment filings.

IT IS THEREFORE RECOMMENDED that plaintiffs' Rule 56(d) motion (D.E. 143) be DENIED, but that the pending motions for summary judgment be DENIED WITHOUT PREJUDICE, pursuant to Rule 16.

## <u>CONCLUSION</u>

In sum, IT IS ORDERED that plaintiffs' motion to compel (D.E. 93) is ALLOWED IN PART AND DENIED IN PART on the terms set out above and that defendants' motion to strike (D.E. 139) is DENIED AS MOOT;

IT IS RECOMMENDED that plaintiffs' motion for relief pursuant to Rule 56(d) (D.E. 143) be denied, but that the pending motions for summary judgment be DENIED without prejudice pursuant to Rule 16; and

IT IS FURTHER ORDERED that the Clerk send copies of this Order and Memorandum and Recommendation to counsel for the respective parties, who shall have until 27 January 2015 to file written objections to the Memorandum and Recommendation herein on plaintiffs' motion Rule 56(d) motion. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the

unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

SO ORDERED, this the 13th day of January 2015.

_____

James E. Gates
United States Magistrate Judge
